Per Curiam.
 

 Not to notice allegations, either in the bill or answer, except such as are supported by proof, the facts seem to be, that in 1804 the present defendants put Rogers in possession of a tract of land, and small plantation and houses upon it, for one year, in consideration of a rent to be paid by him for it. Differences arose between them; an arbitration was agreed upon, which not
 
 *435
 
 taking effect,Waller, in the absence of Beatty, framed articles, signed by him and Rogers, and sealed ; Waller promising that Beatty by a certain day should sign them also, or that the same should be considered as of no effect. These stipulated that Rogers should keep possession for three years and blank months, to be filled up by reference to a lease, said to have been made by a Cherokee to the defendants, which was in the hands of a third person then at a distance. A sum of money was to be paid by Rogers for this liberty. The payments were to be made by installments. The articles were never signed by Beatty. A witness proved what the articles did not state, that Rogers was to have, beside the land and houses and plantation, all the articles 6f personal property attached to the plantation and houses, except the kitchen furniture; but were omitted out of the articles, because, being chattels, the law it was supposed did not require the insertion of them; The * defendants afterwards caused Rogers to be arrested by the military, as being upon Indian lands against the laws of the United States, leaving his family upon the lands. And that after a day or two, being released, he returned to the land again, and continued to reside on it with his family until after the time agreed upon in the articles. After the extinction of the Indian claim by treaty in the year 1805, or 1806, he, Rogers, entered the land as vacant, and obtained a grant for it. That it was claimed by several different grantees under the State of North Carolina. A horse raised upon the plantation, in the year 1804, Beatty sued for, as belonging to himself, and not to him and Waller jointly; and recovered damages for. This horse, Rogers insists, was part of the articles attached to the plantation, and a part of the consideration for which he was to pay the sum aforesaid. It is argued, that a lease made to the defendants by a Cherokee Indian, of lands within the Indian boundary, was void by the laws of the United States. And references are made to many cases, showing that bonds prohibited by statute or the common law are void: such as bonds in restraint of marriage; those for adulterous cohabitation: simoniacal bond: these are all void; and so are bonds and leases prohibited upon grounds of public policy, and for the prevention of public mischief. It is equally undeniable that contracts in
 
 frauden legis,
 
 and to the detriment of public rights, and in defeasance of them, are also void. But does it follow, that making a contract
 
 *436
 
 void for obviating a public mischief, does by inevitable inference make void all subordinate and derivative contracts ? Such a consequence, in the case before us, would directly infringe another rule of equal importance to the general welfare : a rule which ought not to be deemed to be rescinded but by a plain declaration of the Legislature or irresistible inference. It is this : “
 
 (food faith in all things ought to be preserved,”
 
 * and temptations removed as far as possible to forsake the path of simple dealing. With this view is framed the rule between the landlord and tenant. Taking possession under his landlord, he implicitly renounces every advantage, which could not be taken were the possession not delivered to him. The landlord must be placed
 
 in statu quo.
 
 He must not be put to sue a third person, his adversary, for the possession, nor the tenant himself. The possession is his before the lease; it is so by the tenant after the lease; and he must not be deprived of it by the treachery of the tenant. The reason is, because it is not honest; and it is dishonest because it cannot be done but by disappointing the reasonable expectations of the landlord, entertained at the time of the contract, and known by the tenant to be so. Had this good faith been observed in the present instance, had Rogers, when Beatty refused to sign, renounced the contract and possession together, and had placed the defendants as he found them, they probably would have continued it, without interruption, and would have taken the profits which he received for several years. Thus by his misdoings, the defendants have been subjected to losses, and Rogers has reaped benefits he was not in justice entitled to, but which they were; this, too, through imposition upon them, and by the adoption of measures directly the reverse of those which his contract either expressed or indubitably implied. From the source we are contemplating is derived the rule of pleading,
 
 nil habuit in tenementis,
 
 where the tenant has not enjoyed, and can only be charged upon a contract which enabled him to have enjoyed if he would ; and of not so pleading where he has actually enjoyed. It is unjust to have the benefit of a contract, and then to evade the payment of the stipulated price. 5 Term, 4; 1 Wash. 87, 351. The case in 5 Term is exactly the same in principle as this ; and answers the distinction taken at the bar * between á primary contract prohibited by statute, and its derivative contract, and one
 
 *437
 
 not so prohibited, and its derivative. Still, says the decision, the rule of not impeaching the landlord’s title by the tenant shall operate. If the landlord be entitled to recover at law, it cannot be said that he is not entitled in equity. The rule in both courts is the same. Here we might stop, for this is ground enough to decide the case upon.
 

 But indeed another point is made, and it is well enough here not to overlook it. The common law and trial by jury, in case of disputed facts, is the birthright of the people, and the best preservative of their constitutional rights. Every deviation from its rules, though sometimes dictated by necessity, yet at the same time widens the breach for intrusion, and exposes the common law to encroachment. It puts into action the exercise of a discretion, uncongenial with the genius and the spirit of the common law. If new and extraordinary cases sometimes call for its exertion, at least it ought to be confined within the limits assigned by precedent, with respect to old ones; and of this sort is the one now before us. Rogers says he was not legally bound by the articles, because, as he avers, the writing was delivered upon condition, to be obligatory upon him if Beatty should sign it, and not otherwise, and that Beatty did not sign. Is not this triable at law by a jury ? Shall this court try it over again, and reverse their decision ? Whose decision is most to be credited upon a matter of fact, theirs or ours ? The Constitution will answer this question. True, these verdicts were rendered only in two actions, for two different installments; the others remain yet to be tried. But is not a verdict upon the same point, between the same parties directly in issue, .though not in the same suit, forever conclusive upon these parties ? We refer from memory to Willis’s Reports, and to Peake’s Evidence, 47, 38; 3 East, 366. Much * more, then, if the point be upon the same instrument. Rogers is forever concluded at law upon this point, if it be properly relied on in pleading, or so far as a verdict concludes, when given in evidence; that is, not absolutely, but subject to such considerations as may fairly lessen its force before a jury ; which considerations, however, to have weight against a verdict, ought to be of immense magnitude. Rogers cannot effectually say he did not execute this writing, nor can he say that it is but an error. Again, it is argued that the original lease was void at law, being an Indian lease ; and that, being void, no under lease could "be made, and that
 
 *438
 
 the defendant at law was not bound to pay whether he did or did not enjoy. Is there an impediment shown which disabled him to plead these matters of defense at law ? Was he hindered by any uncommon circumstance which caused a mistake, or any inevitable accident, or any unfairness in the trial, not discovered in time to be corrected ? Then what specifically is the ground of coming into this court ? Is it the failure of consideration ? That will do, perhaps, when a fee is purchased, and the vendee is drawn in by an averment of the seller (known by himself to be untrue) that the title is a good one ; or when the vendor by articles declares it, where in truth he has no title. Here the consideration fails, for he is to pay for a good title and cannot obtain it. In case of a lease it is not a good title, but possession, that is purchased, and the enjoyment thereof; if the lessee hath that, he hath the thing for which he was to pay. Here, indeed, the reflection meets us, that a third person having the title may by and by recover in ejectment, and then by action of trespass for the mesne profits, recover of the tenant after he has paid his landlord. If the rule of law exposes him to this inconvenience, it is not for this court to change the law ,• 'and what is a more substantial answer to show what is the rule of law, we would not in reason change it, were we at liberty to do *so. It is better for him to resort back to the man he trusted to, than for a stranger to do so. It is better not to provide against a contingency that may never happen, than to take for granted that it will, and therefore exempt the tenant against his own plighted faith, and encourage the search for dormant titles to be used against the landlord, and other devices to cozen him, which otherwise -would never be thought of. The only remaining equitable ground insisted on is, that the defendant at law is placed by the verdict without remedy at law, though greatly injured, and therefore,
 
 ex
 
 necessitate, ought to be redressed in this court. But is not the record of the verdict, when fairly obtained, and standing in force, higher evidence than that which is offered to militate against it? Again, would not this suggestion let in the interference of equity to every possible case at law ? Cannot the losing party say in every case, here is injustice ; here is the evidence to prove it; that the court must inspect it to discover the injustice, and when discovered, to apply the remedy ? If this were enough to induce the interference of this court, the very foundations of the common law would be subverted.
 

 
 *439
 
 Then here is no one ground recognized by correct precedents or principles for applying to this court; and for this reason, also, the. present application by this bill ought to be rejected.
 

 Bill dismissed.
 

 See, as to
 
 injunction against judgment at law,
 
 King’s Digest, 2401, 2411. As to
 
 illegal contract, Ohio Life Ins. Co.
 
 v.
 
 Merchants’ Ins. Co.,
 
 11 Hum. 1;
 
 Jones
 
 v.
 
 Davidson,
 
 2 Sneed, 447. As to
 
 landlord and tenant, Blount
 
 v.
 
 Garen,
 
 3 Hay. 91, and note
 
 sub fin.
 
 See King’s Digest, 3616, 8107, 9707.