Haywood, J.
delivered the opinion of himself and of Judge Peck.
The record commences by stating that a judgment had been rendered at the suit of Tipton against Rhea, at the court-house in Knoxville, before the Justices of the Court, at April sessions of the County Court, 1810; that a capias ad satisfaciendum had issued thereon, returnable to October term, 1815, which had been executed on Rhea, the defendant, who had given bond with William Harris, Samuel Eakin, Edmund Buchanon, William Montgomery, John Findlay, John Wilson, Jacob Copenbarger, Samuel Harris, Jesse Bright, and Archibald Rhea, his sureties for keeping the prison bounds. And now, at this day, the first Monday, of July, 1817, came Williám Tiptpn, by his attorney, and suggesting that the said Robert Rhea has broken the rules of said prison, moves the Court for a judgment against said Rhea and his sureties, as the Act directs. Continuances are entered upon the minutes of the Court; some on the affidavits of the plaintiff, and sometimes of .the defendant; many orders are entered for taking depositions on both sides, sometimes on affidavit, and sometimes by consent until October, 1823, when the cause was heard in presence of the parties, who appeared by their attorneys, when it was considered by the Court that the plaintiff should take nothing by his motion ; thereupon, an appeal was taken to the Circuit Court, a bill of exceptions was signed and sealed by the Court, before granting the appeal, which showed that the defendants had taken out subpoenas for witnesses ; that attorneys had marked themselves for the defendants on the docket, &c., and exhibits affidavits for some of the defendants for continuances. After the cause was taken to the Circuit Court, and several continuances entered, at August term, 1822, the *332 deaths of Samuel Eakin, Samuel Harris, and Archibald Rhea, are suggested ; and during the same term judgment for the plaintiff was rendered of the following tenor: that the parties appeared, by their attorneys, and the motion being argued, and it having been proved to the satisfaction of the court, that a ca. sa. had regularly issued against said R. Rhea, from the Court of Pleas, &c., for Knox County, to the sheriff of Blount County, founded on a judgment regularly obtained in the County Court of Knox County; that said sheriff arrested the said Robert Rhea thereupon ; that the said Rhea and the other defendants duly executed the bond, dated the 11th of August, 1815, in the penalty of $2,500, with condition that the same should be void, if said Rhea kept continually within the rules or bounds of the prison of Blount County; and that the same was assigned to the plaintiff by the said sheriff, and the same, with the said ca. sa. was returned in due time to the County Court of Knox; -that Rhea afterwards violated the condition of said bond, by escaping out of said bounds, and the Court being likewise satisfied by the appearance of said defendants, and other steps taken in the cause by them, that, said defendants were duly notified. It was considered, &c. Judgment for the penalty of the bond to be discharged by the payment of $ 1,272.09, the amount of the damages in the said ca. sa. with $ 388 and interest thereon with costs, mentioned in the ca. sa. &c. Harris moved for a new trial on his own affidavit; the new trial was refused, and a bill of exceptions was signed and sealed. In the exceptions, the bond is set out with the assignment, also a ca. sa. with a return thereon, that such a bond was taken and returned therewith, &c. The original bond was used on the motion, and no evidence is set out proving from whence the bond was brought, unless the return of the ca. sa. proved that fact. . An objection was made to the reading of the bond, but was overruled. The prison bounds of Blount County were then proved by the record of the County Court of that county.
Jeremiah Brooks was introduced as a witness to prove the breach of the prison bounds, but as his story was inconsistent and not relied on, he being contradicted and discredited, it is deemed unimportant to set out his testimony.
Lowry proved, while standing within ten feet of the line of the prison rules, and whilst Rhea was a prisoner therein, that said Rhea rode up the street and passed what he understood to be the line, about the distance of •half the width of a cross street, which he thought was about sixty feet wide ; that he turned his horse and rode back within the bounds, and continued therein until discharged by habeas corpus; that standing at or near the spot, he could see better than a person at a distance.
John Wilkerson, Esq., proved that the place described by Lowry, to which Rhea rode, was out of the bounds, but he of his own knowledge knew nothing of the breach.
*333 Several witnesses proved that they were standing in the street, and saw Robert Rhea ride up the same at the time mentioned by Lowry, and do not believe that he passed the bounds of the prison rules; he rode near the place and turned. Rhea was intoxicated, and some persons near the place where he turned were heard to say, he knows how far he can go, or dare go; others proved that, as far as they knew or ever heard, Rhea had kept his bounds. There was proof that Tipton signified to the person with whom Rhea boarded that he, Tipton, would give $ 400 to have it proved that Rhea had broken the prison bounds.
One witness proved, that 'Lowry, in conversation said, that Rhea had rode until half the horse was above the post where he stood; that Rhea immediately turned back.
The counsel for Harris offered to read the record of a suit in the case of Walker v. Simonds, to show by the bill of exceptions therein, that Rhea had been examined as a witness in this suit at the term, and about the time that Rhea had been arrested on the ca. sa. but the Court would not hear said record, because it belonged to the files of the Supreme Court, whither it had been taken by writ of error.
The defendant’s counsel then read a record of the proceedings on a writ of habeas corpus, on which Rhea had been discharged from his imprisonment. Two grounds were laid for the discharge in the petition ; first, that he, Rhea, had been arrested when under subpoena in the suit of Walker v. Simonds, and that the jailer would not support him while in- the bounds.
The subpoena was also produced at the examination of this cause, executed on Rhea.
Upon this statement of facts I now proceed to give the opinion of the Court.
As there is one question made in this cause relative to the trial of disputed facts, upon a motion for judgment on a prison-bounds bond, which affects very materially all laws authorizing judgments instanter upon motion, sometimes with notice and sometimes without notice, it is therefore a question of the greatest moment, and deserves to be settled with the most cautious circumspection ; for as in all of them disputed facts arise to be determined before judgment can be given, and as the reference of those facts to jurors would instantly subject the proceedings upon such motions to all the delays incidental to other actions, the effect would be to render them as dilatory as other proceedings are, and to defeat completely the views of the Legislatures which passed them; for immediately it would become the practice upon all such motions to make allegations of facts, to be referred to juries, without regular pleadings and precise issues, and without knowing to what points the evidence of the parties was to be directed; for want of certain issues each party would be obliged to come prepared with evidence to any fact which could possibly be alleged, *334 and perplexity would be endless ; instead of the remedy by motion being short and easy, it would be lengthened and interminable. Such inconveniences cannot! be viewed without concern, nor without exciting a high degree of solicitude. Disputed facts may arise on prison-bounds bonds; probates of wills, as conducted before the Act of 1789. ch. 23 ; petitions for legacies, filial portions, and distributive shares of intestates’ estates; appeal bonds; certiorari bonds; stay bonds; injunction bonds; motions against sheriffs, clerks, and constables; motions against public and county* treasurers, and all collectors of public moneys; motions by sureties against their principals, and every disputed fact in all matters of chancery jurisdiction, would be no longer triable, as it has been for many years past. There would be an instantaneous revolution in all these proceedings, and in those against delinquents who failed to pay their public or county taxes. Such being the consequences of the argument advanced on the present occasion, the same should be fairly met, and the law upon the subject should be fairly ascertained and applied; and this is the more.indispensable, as the acts for proceeding to judgment by motion, have greatly increasedfin modern times. As the acts themselves do not direct issues and the reference of facts to juries, and indeed, do not contemplate or provide for it; and as courts cannot add a provision, which it is the intent of all such laws to exclude, then either the acts themselves must be abandoned or they must be carried into effect, as they are written, according to the wishes of their makers. There is no alternative but to execute* or reject them.
Upon what ground is it believed that a jury must try the disputed facts, when the Act does not require such a trial.
The sovereign legislative power of Tennessee, like the sovereign power of all other States, of whatsoever character they may be, may do all things, not naturally impossible, which it deems promotive of the public welfare, except in such instances where, by the fundamental law of the nation, written by the mighty hand of the people, it is forbidden. And in any instance where legislative power is questioned it bounds over opposition, unless a restriction upon that power in the particular instance can be clearly pointed out. The restriction, to make laws for judgments upon motion, and for the trial of disputed facts without a jury, is supposed to be contained in the Constitution of Tennessee, art. 11, § 8: “No freeman shall be taken or imprisoned, or disseised of his freehold, liberties, or privileges, or outlawed or exiled, or in any manner destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers or the law of the land.” Is. the judgment to be pronounced against him in the establishment of certain facts, that he is to be taken into custody, or that he shall be imprisoned, or that he shall lose his privileges as a citizen, or that he shall be outlawed or exiled, or that he shall be destroyed or suffer death ? He has a right to be tried by his peers, and of this right he cannot be bereaved *335 by any act of the Legislature. Is the judgment to he that he shall lose his freehold, or his corporate rights, or his personal property ? He has a right to a trial by jury of all the controverted facts in the cause in which that judgment is to be pronounced. The right to a trial by jury in all these instances, is too sacred to be intermeddled with by any power upon earth; too inseparable from human happiness to be submitted to the discretion of any human Legislature; it stands upon eternal foundations, and as time grows old it grows in veneration and stability. The trial by jury is likewise made indispensable, whenever punishment is to be inflicted, whether corporal, infamous, or pecuniary; for by art. 11, § 14, every criminal charge is to be prosecuted by indictment or presentment, which ex vi termini implies a trial by jury. In all these instances the trial by jury can neither be changed nor impaired in perpetuity, unchangeable, unalienable, and inseparable ; but in cases where the trial by jury is not so necessary to the welfare of the citizen, and may be dispensed with without endangering his independence or safety, then the Legislature is left free to choose the course most suitable to existing circumstances; and like other Legislatures, ours may exercise its judgment in the adoption of modes of trial, best suited to the subject. In matters not heretofore tried by jury, such as matters of equity or of ecclesiastical jurisdiction, which experience showed might be safely left with a judge, the Legislature may regulate them according to its discretion, for what temptation could it have to choose modes which were not the best for the people. Improvements in science, and change of circumstances, might render new modes more eligible than the old ones; and it were unwise so to shackle the Legislature that it could not use the lights which experience in its progress might discover. In all instances, the discernment and the patriotism of the Legislature are relied on by our Constitution, except in those which were of too much value and importance to be left to human discretion. In all instances, therefore, where the Legislature has prescribed a proceeding by motion to obtain judgment for moneys due from public or private delinquents, where the judgment to be pronounced will not directly or immediately affect the individual rights and privileges secured to the citizens by the articles and sections under consideration, the trial of facts may be without the intervention of a jury, if such be the meaning and intent of the law which it makes. Sevier’s office was a freehold, and the university lands were also freeholds and vested property. The decisions in these cases were not incompatible with those of 1 Haywood, 29, and 5 Haywood, nor with the opinion which the Court is now giving, nor with the laws made for judgments upon motion, which do not affect any of the rights which are placed under the protection and guardianship of the trial by jury. The judge of the Circuit Court, therefore, did not err in hearing and deciding upon the facts of the case himself.
*336 The discharge of the prisoner by a habeas corpus is urged to he conclusive proof of the nullity of. the bond to keep within the prison bounds.
Were the discharge used as a defence for the sheriff in an action against him for an escape from the walls of the prison, it would be a good defence, because the sheriff had no power to resist the sentence of the judge, and could not be made answerable for what he did; so, of a discharge under the insolvent acts, by those clothed with jurisdiction over the subject. It is not proved by the case cited from 3 Cranch, 300, that the discharge would have any retrospective effect, but only from the period when the discharge actually happened; if it would affect the antecedent rights of the parties, it must be upon principles disclosed in some other precedents. Suppose a right of action vested in the plaintiff, and a suit instituted,’can the judge discharge it’by an indirect sentence in the habeas corpus, when he could not directly do so ? Could he, by an ex parte proceeding, cancel an obligation which, upon trial in an action between the parties, might be found to be legally valid, and thus render a deduction from what he has done as potent a bar as a judgment given upon the very point, in an action between the parties concerned ? It seems to us that nothing will do to settle the point in controversy between these persons but a trial and judgment in a proceeding to which they are both parties, upon the very point now in controversy; and of course that it is now open to be inquired into, whether the prison-bounds bond was a valid bond or not. Should an appeal bond be required of an administrator or executor, and the appeal withholden till the bond be given, the bond so given would be one extorted by refusal of his right till he made it, and because of the want of assent of his will, such bond would be voidable. In the case of arresting a witness, or other person privileged from arrest, such as insolvents or the like, on writs of capias ad satisfaciendum, the sheriff, for want of notice, may be innocent; Doug. 671, 674; even if he have notice it may be of such a nature that he is incapable of deciding upon it. In all such cases the arrest is good till the party arrested will cause himself to be discharged by habeas corpus, and by showing his case before the judge by affidavits; and trespass vi et 'armis will not lie against the sheriff for making the arrest ; the arrest is, therefore, not void, but voidable, at the election of the person arrestedhe has an obvious remedy, the habeas corpus; if, instead of resorting to it, he give a prison-bounds bond, it is a voluntary act, proceeding from the full assentation of his own free will, and we think he cannot afterwards say that it was an act in which his will did not participate. If the arrest and the imprisonment were illegal and void, a bond taken by the sheriff to. be a true prisoner is one which he ought not to have taken, and may be avoided by showing the circumstances under which it was taken. This is not a negatived position, but the force of it is eluded, by saying that the arrest was absolutely void. Do we at this moment know whether *337 the fact existed, which is opposed to its legality? Whether the witness lived at the place where he gave testimony, or in the country ? Or "whether he consented to the arrest or not, in order that he might then give security for the prison bounds, which, in the vacation of the Court, he could not so readily procure ? These facts would make good the arrest, and as it may be avoided by showing these facts, the arrest cannot be said to be absolutely void. If, instead of investigating facts, the person arrested chooses to submit, it is a strong evidence that the facts, when made to appear, might have justified the arrest. The prison bounds bond, therefore, was not void nor voidable, being freely given, and the arrest was made unavoidable by the giving thereof.
As to the want of notice, whoever appears in due time, ipso facto, proves thereby, that he had due and timely notice.
As to the motion against all the sureties, and afterwards the death of some, and the deaths suggested and going on to judgment against the survivor, the rule of the common law is, that if you begin with all, you must go on with all, otherwise the action will be discontinued as against all, and that if some die, the plaintiff may go on against the survivors, because the executors of the dead ones are not liable. By the law of this State the action survives against them, and the question is, whether the law, which makes the executors liable, requires that they shall, or only permits that they may, be proceeded against, leaving the plaintiff at liberty to proceed against one only if he think proper, when the action was originally commenced against all. Although, in the beginning, an obligee may sue. all jointly, or some separately, he cannot, when a joint action is once commenced, drop some who are liable and proceed against the others; that would throw the whole burden upon one, and might, in the end, be very detrimental to him: though if some, or all but one die, and the debt becomes due only from the survivors, these may be proceeded against, because, by the death of some, their estates are exonerated; but, as by the common law, all who are liable or debtors, must be proceeded against to the end, where all are sued in the beginning, hence the rule is, that all must be proceeded against to the end of the action. True, in a new action, the survivor might be proceeded against severally, and now by proceeding against the survivor the effect would be the same ; yet, as there are other debtors equally liable, and this action.in its commencement was a joint one, in order to force him against all, his action shall be discontinued unless he continue to proceed against all. The effect is, that he will make all equally contributable in the first instance, and without delay, rather than be put to a new action against any one severally. At the common law, to proceed against the survivor was of necessity, therefore it was per mitted, but here it is not necessary, and therefore shall not be permitted. An equitable contribution at once is preferable to a new action against each *338 contributes, and shall not' be eluded by a prosecution of one out of several, who were in the commencement jointly sued. This judgment, therefore, is wrong for having been rendered against part only of the joint obligors, when it was originally commenced against all of them.
As to the jurisdiction, it is argued that the Court had it not, because notice was not proved, and because the prison bounds bond was not produced when the motion was made. It is proper to correct that general error which is so extensively received, that the jurisdiction of the Court is founded upon its incipient process, that is to say, on- notice, in motions where notice is required; publication where that is prescribed; and- an appeal bond in cases of appeals; on the report of the sheriff in the case of taxes and the like. All these have been called the givers of jurisdiction to the Court. What is it that gives jurisdiction in England ? Inferior courts receive it from grants of the king to corporate towns, or by prescription which presupposes a grant; and in pleading, the jurisdiction is specified as well as the mean by which it was given, and both the one and the other may be denied. Courts which are not inferior, but founded on the general law, do not state jurisdiction, nor the means by which it was given, for all know the general law, and the jurisdiction which that gives to every court erected by its authority; and whenever it is desired to know what is the extent of jurisdiction of any such court, the law is appealed to, and it is not looked for, nor can it be'stated in pleading; for, if the plea state what the jurisdiction is, who is to try the plea? A jury? Shall a jury try what the law is ? No ; but the judges only, and not upon a plea, but by resort to the general law of the country, which no plea or verdict upon it can control. In this country there is no court which is not established by the general law; its jurisdiction is there defined, and depends upon the law, and nothing else, and is precedent to, and independent of, any process, or other proceeding which the law directs to be used under it; and being precedent and independent of the mode of proceeding appointed for it, can judge of it by virtue of its antecedent jurisdiction, and if not such as the law prescribes, can reject it. In summary proceedings appointed by a general law, the jurisdiction need not be stated, for the law does that, but the case which is brought before the Court should be the same as that defined in the law, and then the Court must act upon that cause, according to the modes and process which the law prescribes. These latter are not a part of the jurisdiction, but the consequence of jurisdiction, the subject-matter for jurisdiction to act upon in exercising itself. The record of summary proceedings should not only show the cause to be within it, but that it was exercised in all the particulars presented to it, as the Legislature has directed; for each particular direction is a guard provided against the abuse or perversion of the. delegated authority. According to these principles, jurisdiction is established-by the law of 1759, and it is called into *339 action by motion, stating a prison bounds bond; as the jurisdiction of the Circuit Court is called into action by a writ and declaration. Whether the writ or notice be bad or good, or the declaration or motion be bad or good, in no wise affects the jurisdiction in either case. The Court will exercise jurisdiction in both instances, and by virtue of it, will decide upon the sufficiency or insufficiency of the writ and notice, as well as of the motion and declaration. The Court may judge that appearance is equivalent to notice, and that a motion or declaration, which specifies the particular bond intended to be recovered on, is enough; and may think that even less certainty is requisite in a motion than in a declaration, the former being summary, and being intended to be exempted from the refinements and niceties incidental to the latter. If the notice must state the whole record that led to the arrest, and to the bond, and the bond itself, and its contents, this could be no longer a summary proceeding, but a tedious one, rendered more lengthy and perplexing than was the proceeding at the common law.
Note. — In Greer v. Miller, 2 Term. 187, and Tipton v. Harris, Peek, 414, says Mr. Meigs (Dig. page 632), the Court, in construing 1789, 57, 5, decided that, although the obligee may sue all the obligors jointly, or some separately, yet he cannot, when a joint action is once commenced, drop some who are liable, and proceed against the others. And if one or more die in a case where an action or motion has been begun against all, the law is not that there may, but that there must, be a revivor against the personal representatives .of the deceased. On tho other hand, in Claiborne v. Goodloe, Coolce, 391, the Court held that the death might be suggested, and judgment taken against the survivors. We believe, said the Court, that the word “shall” applies only as between the representatives and the survivors, so as to make them liable inter se for their proportions ; and that the word “ may ” relates to the remedy of the obligee.
*339 A great deal more has been said than was necessary for the decision of this case, because the subjects involved are of great and daily use, and there seems to be, at present, no standard by which to determine any of the various questions which have arisen in this cause, and are daily arising in others.
But the Court are clearly of opinion that the evidence is not such as enables the plaintiff to recover, not proving a breach of the prison bounds; for if, instead of referring the facts to a jury by a proceeding according to the course of the common law, that they may weigh the evidence, and make the proper deductions, the plaintiff will apply to the Court by motion, on which the proceedings - are summary, and will call upon the Court to judge of the evidence, it ought to be clear and forcible in support of his case; for, if doubtful, the Court cannot make choice- of that part of it which is most in favor of the plaintiff; if he will call on the Court to determine the fact, a revising court will go into the evidence, though, if a verdict were for the plaintiff, on the same evidence, it would not disturb the verdict; and in coming to a decision on the evidence, the Court will incline against the plaintiff, as to every conclusion which a jury might draw from the doubtful parts of it; even if the fact were established, the judgment is erroneous for not being rendered against the executors of the deceased obligors, as well as the surviving surety (Harris), the action having been originally commenced against all.
Reverse the judgment of the Circuit Court, and affirm the judgment of the County Court.
The latter is undoubtedly the better reading, and has practically prevailed. All the subsequent legislation, such, for example, as 1820, 25, 2; 1825, 65, tended in the same direction. And now, by the Code 2787-2790, there is no room for doubt.
All of our earlier decisions, and notably Claiborne v. Goodloe and Tipton v. Harris, treat motions as actions, only differing in the mode of commencement. Banks v. Brown, 4 Y. 198. After the suit was instituted by motion, it was governed by all the general laws relating to actions. But statutes changing the common law mode of proceeding have always been construed strictly. Cooke, 267 ; 2 Hum. 13 ; 3 Hum. 415 ; 4 Hum. 57, &c. This was the case in regard to the attachment laws, until the Legislature had so repeatedly counteracted the decisions by special enactments to remedy the supposed defects, that the courts felt constrained “ to adopt such construction as will carry fully into effect the intention of the Legislature.” Bunyan u. Morgan, 7 Hum. 213. With deference, that is. precisely the true rule of action in regard to all legislation. A strict construction, so far as the provisions are intended to protect parties who may not have actual notice, and are not before the Court, is, no doubt, the object of special legislative requirements, and, manifestly, the dictate of justice and good sense. Therefore, says the principal case, the record in summary proceedings should not only show the cause to be within the jurisdiction, but that tho jurisdiction was exercised in all the particulars presented to it as the Legislature has directed; for each particular direction is a guard provided against the abuse or perversion gf the delegated authority. But when the motion has had the effect of bringing the parties before the Court, and they have entered their appearance, why should strictness of construction be longer resorted to ? Is not the case, then, in the condition of a suit commenced by actual summons ? “ The appearance,” says the principal case, “ is proof of notice.” It is difficult to see why, after such appearance, the action should not, in all respects, be governed by the general laws relating to actions; or why any greater strictness should be resorted to in applying those laws, than in other cases. The general spirit of the Code will, I think, be found in accord with these suggestions.
Acting upon the rule of strict construction, our courts have held that a motion will not lie in the first instance, notwithstanding the Act of 1789, against the personal representatives of deceased obligors, but may be made against the survivors alone. 3 Hum. 415 ; 2 Sn. 503. In Houston v. Dougherty, 4 Hum. 505, they went h step further, and hold that if the principal obligor be dead, a motion cannot be made against the surviving obligors, his sureties. And in Burroughs v. Goodall, 2 Head, 29, it seemed to be considered the legal sequence of these decisions, that if any of the obligors die after the motion has hem made, and pending the litigation, the plaintiff could not revive ; thereby overruling, without referring to it, the principal case, where, as we have just seen, it was held that the plaintiff, under such circumstances, not only may, but must, revive. They went further, and held that if the principal obligor die, the suit not only abates as to him, but as to the survivors; thus making the plaintiff’s rights, acquired by the action, dependent upon a subsequent event over which he could have no control. Such a decision, be it right or wrong, carries us back fully a hundred years in judicial hermeneutics. The decision may be the legitimate result of the previous adjudications. But there must he an error either in the premises or the conclusions, when a cause in which all the parties have entered their appearance, and are regularly contesting, is thus terminated. The evil has, however, in a great measure, been remedied by Code 3597 and 3626, as construed in Smith v. Woods, 1 Cold, 539, — a decision in marked contrast with that in 2 Head, hy the same eminent judge, and which, in effect, overrules the previous train of cases. — Ed.