IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
September 4, 2019 Session


## JODI McCLAY v. AIRPORT MANAGEMENT SERVICES, LLC


**Rule 23 Certified Question of Law
from the United States District Court
for the Middle District of Tennessee
No. 3-17-CV-0705   Eli Richardson, Judge**

_____

**No. M2019-00511-SC-R23-CV**

_____


Cornelia A. Clark, J., dissenting.

I dissent.   I would hold that Tennessee Code Annotated section 29-39-102(e) (2012) violates article I, section 6 of the Tennessee Constitution by usurping the jury's essential and constitutionally protected fact-finding function.

Every version of the Tennessee Constitution dating back to the attainment of statehood in 1796 has declared "[t]hat the right of trial by jury shall remain inviolate."[1] The contours of this right thus "'have remained unchanged'" for the past 223 years. Sneed v. City of Red Bank, Tenn. 459 S.W.3d 17, 29 n.8 (Tenn. 2014) (quoting Jones v. Greene, 946 S.W.2d 817, 823 (Tenn. Ct. App. 1996)).   This constitutional guarantee preserves "the right of trial by jury as it existed at common law and was in force and use under the laws and Constitution of North Carolina at the time of the formation and adoption" of the Tennessee Constitution of 1796.   Newport Hous. Auth. v. Ballard, 839 S.W.2d 86, 88 (Tenn. 1992) (citing Trigally v. Mayor of Memphis, 46 Tenn. 382 (1869));

---

[1] Tenn. Const. art. XI, § 6 (1796); Tenn. Const. art. I, § 6 (1834); Tenn. Const. art. I, § 6 (1870). The full text of article I, section 6, the current constitutional guarantee, states "[t]hat the right of trial by jury shall remain inviolate, and no religious or political test shall ever be required as a qualification for jurors."   Tenn. Const. art. I, § 6 (1870).

see also Helms v. Tenn. Dep't of Safety, 987 S.W.2d 545, 547 (Tenn. 1999).  As for claims that would have been tried to a jury at common law, this constitutional guarantee ensures that the right of trial by jury "shall remain inviolate."  Newport Hous. Auth., 839 S.W.2d at 88; see also Young v. City of LaFollette, 479 S.W.3d 785, 793-94 (Tenn. 2015) (stating that the constitutional right to trial by jury does not apply to statutory rights and remedies first created after the adoption of the 1796 Constitution, although the General Assembly remains free to provide expressly for a statutory right of trial by jury); Smith Cnty. Educ. Ass'n v. Anderson, 676 S.W.2d 328, 336 (Tenn. 1984) (recognizing that the constitutional right to trial by jury does not apply to inherently equitable claims that would not have been tried to a jury at common law); Jones, 946 S.W.2d at 823-24 (enumerating the claims at common law to which the right to trial by jury did not apply).[2] Article I, section 6 therefore preserves the essential functions of the jury.  One of those essential functions "is that all contested factual issues be determined by an unbiased, impartial jury."  Ricketts v. Carter, 918 S.W.2d 419, 421 (Tenn. 1996); see also State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991) ("Among the essentials of the right to trial by jury is the right guaranteed to every litigant in jury cases to have the facts involved tried and determined by twelve jurors.").  This constitutionally guaranteed fact-finding function encompasses the jury's determination of the type and amount of damages. Indeed, only seventeen years after the current version of article I, section 6 was adopted, this Court declared:

> In trials at common law, *the jury are the proper judges of damages; and, where there is no certain measure of damages, the court ordinarily will not disturb their verdict, unless on grounds of prejudice, passion, or corruption in the jury.*  To this rule we have conformed our practice, and it is the only safe one on the subject.  In view of the rule at common law, and as discovered in the decisions of our predecessors on this bench, we hold that, *in actions for damages for personal torts, it is within the strict province of the jury to estimate the extent of the injury, and assess the damages; and unless there is a manifest abuse of this trust, such as to indicate passion, prejudice, partiality, or unaccountable caprice, or corruption, that the trial judge ought not to interfere.*

Tenn. Coal & R.R. Co. v. Roddy, 5 S.W. 286, 290 (Tenn. 1887) (emphasis added) (internal quotation marks omitted) (citing Goodall v. Thurman, 38 Tenn. 209, 218 (1858)); Dimick v. Schiedt, 293 U.S. 474, 480 (1935) ("[T]he common-law rule as it

_____

[2] The parties do not dispute that the constitutional right to trial by jury applied at common law to personal injury tort claims, although some dispute has arisen about whether noneconomic damages were available at common law.  The majority has assumed for purposes of this appeal that such damages were available, so I have accepted that assumption as well.

existed at the time of the adoption of the Constitution" was that "in cases where the amount of damages was uncertain[,] their assessment was a matter so peculiarly within the province of the jury that the Court should not alter it." (citations and internal quotation marks omitted)). Article I, section 6 squarely places the determination of damages "within the strict province of the jury." Roddy, 5 S.W. at 290; see also Meals ex rel. Meals v. Ford Motor Co., 417 S.W.3d 414, 419 (Tenn. 2013) ("We entrust the responsibility of resolving questions of disputed fact, including the assessment of damages, to the jury."); Borne v. Celadon Trucking Servs., Inc., 532 S.W.3d 274, 308 (Tenn. 2017) ("Where a party invokes the right to a jury trial, our constitution requires 'that the jury be allowed to determine all disputed issues of fact.'" (citations omitted)). Indeed, the jury's constitutionally protected function of determining damages is so well established that, "[t]o avoid contravention of the right to jury trial clauses of the federal and state constitutions, the trial court must obtain the consent of the party against whom [an] additur or remittitur is to be entered; if that party does not consent, the trial court must order a new trial." Borne, 532 S.W.3d at 309 (citing Spence v. Allstate Ins. Co., 883 S.W.2d 586, 594 (Tenn. 1994); Tenn. Code Ann. §§ 20-10-101, -102 (2009)).

Tennessee Code Annotated section 29-39-102(e) usurps and replaces the jury's constitutionally protected function of determining damages with an arbitrary ceiling on damages mostly unrelated to the specific facts and circumstances of each litigant's claim. The effect of Tennessee Code Annotated section 29-39-102(e) is a mandatory remittitur that would otherwise be unenforceable unless a trial court first determined that the evidence in a particular case preponderated against the jury's determination of damages *and* the plaintiff then consented to the remittitur. See Borne, 532 S.W.3d at 309-10; see also Moore v. Mobile Infirmary Ass'n, 592 So. 2d 156, 163 (Ala. 1991) (describing a statute capping noneconomic damages as "patently inconsistent with the doctrines of remittitur or new trial as we have applied them"). By usurping the jury's constitutionally protected function of determining damages and rendering the jury's factual findings meaningless, Tennessee Code Annotated section 29-39-102(e) clearly contravenes article I, section 6.

In so concluding, I adopt the reasoning of the high courts of Alabama, Georgia, Kansas, Missouri, and Washington, which have eloquently explained how statutes capping damages in their own jurisdictions violate their own state constitutional provisions preserving "inviolate" the right to trial by jury. Moore, 592 So. 2d 156; Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt, 691 S.E.2d 218 (Ga. 2010); Hilburn v. Enerpipe. Ltd., 442 P.3d 509 (Kan. 2019); Watts v. Lester E. Cox Med. Ctrs., 376 S.W.3d 633 (Mo. 2012); Sofie v. Fibreboard Corp., 771 P.2d 711 (Wash. 1989), amended by 780 P.2d 260 (Wash. 1989).[3] See also Lindenberg v. Jackson Nat'l Life Ins. Co., 912

---

[3] Although eight other state courts interpreting constitutional provisions that use the term "inviolate" to secure the right of trial by jury have upheld statutory damages caps, five other state courts

F.3d 348, 353 (6th Cir. 2018) (holding that Tennessee Code Annotated section 29-39-104, the statute capping punitive damages, violates article I, section 6 of the Tennessee Constitution). As the Alabama Supreme Court explained, "[b]ecause the statute caps the jury's verdict automatically and absolutely, the jury's function, to the extent the verdict exceeds the damages ceiling, assumes *less* than an advisory status." Moore, 592 So. 2d at 164. See also Smith v. Dep't of Ins., 507 So. 2d 1080, 1088-89 (Fla. 1987) (striking down a statute capping nonecomonic damages as a violation of the Florida constitutional provision guaranteeing a right of access to the courts and also commenting that "because the jury verdict is being arbitrarily capped," the statute deprived the plaintiff of "the constitutional benefit of a jury trial as we have heretofore understood that right"). The Missouri Supreme Court pointed out that a statute imposing an arbitrary limit on damages "directly curtail[s] the individual right to one of the most significant constitutional roles performed by the jury—the determination of damages." Watts, 376 S.W.3d at 642. The Georgia Supreme Court reasoned that, by requiring courts "to reduce a noneconomic damages award determined by a jury that exceeds the statutory limit," a statute capping damages, "clearly nullifies the jury's findings of fact regarding damages and thereby undermines the jury's basic function." Atlanta Oculoplastic Surgery, P.C., 691 S.E.2d at 223 (citing Lakin v. Senco Prods., Inc., 987 P.2d 463, 473 (Or. 1999)). Like the Kansas Supreme Court, I "simply cannot square a right specially designated by the people as 'inviolate' with the practical effect of the damages cap: substituting juries' factual determinations of actual damages with an across-the-board legislative determination of the maximum conceivable amount of actual damages." Hilburn, 442 P.3d at 523. Finally, as the Washington Supreme Court noted, a statute capping damages "directly changes the outcome of a jury determination" by altering a jury's factual finding "to conform to a predetermined formula[,]" and thereby "robs the [jury] of its function." Sofie, 771 P.2d at 720, 721.

The majority acknowledges that article I, section 6 protects the jury's fact-finding determination of damages but nevertheless concludes that Tennessee Code Annotated section 29-39-102(e) does not violate article I, section 6. The majority advances several arguments to support this conclusion, but none of these arguments is persuasive.

First, the majority characterizes section 29-39-102(e) as merely a permissible legislative alteration of the common law. The General Assembly unquestionably has authority to alter the common law. State v. Howard, 504 S.W.3d 260, 270 (Tenn. 2016). But, the General Assembly *cannot* modify the Tennessee Constitution, and that is what section 29-39-102(e) does. Article I, section 6 unequivocally declares that the common law right to trial by jury as it existed at the time of the adoption of the Tennessee

---

have struck down statutory damages caps as unconstitutional under constitutional provisions that use the term "inviolate" to describe the jury trial right. Hilburn, 442 P.3d at 522-23 (Kan. 2019) (collecting cases).

Constitution "shall remain inviolate." By this declaration, article I, section 6 divests the General Assembly of *all* authority to modify the common law right of trial by jury. The United States Supreme Court has succinctly explained the distinction between permissible legislation that modifies the common law and impermissible legislation that has the effect of modifying constitutional provisions:

> It is said that the common law is susceptible of growth and adaptation to new circumstances and situations, and that the courts have power to declare and effectuate what is the present rule in respect of a given subject without regard to the old rule; and some attempt is made to apply that principle here. The common law is not immutable, but flexible, and upon its own principles adapts itself to varying conditions. *But here we are dealing with a constitutional provision which has in effect adopted the rules of the common law in respect of trial by jury as these rules existed in 1791. To effectuate any change in these rules is not to deal with the common law, qua common law, but to alter the Constitution. The distinction is fundamental . . . .*

Dimick, 293 U.S. at 487 (emphasis added) (citations omitted). Other states addressing statutes capping damages have recognized this distinction as well. See Atlanta Oculoplastic Surgery, P.C., 691 S.E.2d at 223 (rejecting the notion that the authority to modify or abrogate the common law "empowers the Legislature to abrogate *constitutional* rights that may inhere in common law causes of action"); Hilburn, 442 P.3d at 524 ("[T]he cap's effect is to disturb the jury's finding of fact on the amount of the award. Allowing this substitutes the Legislature's nonspecific judgment for the jury's specific judgment. The people deprived the Legislature of that power when they made the right to trial by jury inviolate."); Sofie, 771 P.2d at 720 ("The scope of the right to trial by jury may be defined by the common law through a historical analysis, but the right itself is protected by the state constitution."). The majority erroneously characterizes Tennessee Code Annotated section 29-39-102(e) as a permissible legislative alteration of the common law. Thus, the majority's characterization is fatally flawed and unpersuasive.[4]

Equally unconvincing is the fact-law dichotomy the majority relies upon to uphold the constitutionality of the statute. Admittedly, almost every court that has upheld statutes capping damages has relied upon this dichotomy. See Hilburn, 442 P.3d at 521-22 ("The fact-law or fact-policy distinction has been relied on in varying degrees by almost all courts that have upheld damages caps in the face of jury trial-based

---

[4] The majority's reliance upon Lavin v. Jordon, 16 S.W.3d 362 (Tenn. 2000), also is misplaced. There was no challenge in Lavin to the constitutionality of the statute capping damages at $10,000.

challenges." (collecting cases)). But, as the Washington Supreme Court explained when rejecting it:

> *[t]his argument ignores the constitutional magnitude of the jury's fact-finding province, including its role to determine damages.* Respondents essentially are saying that the right to trial by jury is not invaded if the jury is allowed to determine facts which go unheeded when the court issues its judgment. Such an argument pays lip service to the form of the jury but robs the institution of its function.

Sofie, 771 P.2d at 721. "The constitution deals with substance, not shadows. Its inhibition was leveled at the thing, not the name . . . . If the inhibition can be evaded by the form of the enactment, its insertion in the fundamental law was a vain and futile proceeding." Cummings v. Missouri, 71 U.S. 277, 325 (1866). "In other words, a constitutional protection cannot be bypassed by allowing it to exist in form but letting it have no effect in function." Sofie, 771 P.2d at 724. The fact-law dichotomy exalts form over substance. It serves as a means of obfuscating the true effect of statutes capping damages, which is to render a jury's constitutionally protected fact-finding function an exercise in futility—a façade, a sham, and a pretense.[5]

"The common law and trial by jury in case of disputed facts is the birthright of the people, and the best preservative of their constitutional rights." Rogers v. Waller, 5 Tenn. 205, 208 (1817). As this Court explained only nine years ago:

> The citizen jury provides the foundation of this Nation's legal system. Encroachment on the right to trial by jury was among the chief complaints registered by the American colonists in the Declaration of Independence. Alexander Hamilton considered the right to trial by jury to be "the very palladium of free government." Thomas Jefferson believed it to be "the only anchor, ever yet imagined by man, by which government can be held to the principles of [the] Constitution."

---

[5] Also unpersuasive is the defendant's argument that statutes capping damages are no different than statutes multiplying damages. A statute capping damages arbitrarily and unconstitutionally usurps and alters a jury's constitutionally protected determination of damages. A statute multiplying damages adopts and validates a jury's constitutionally protected determination of damages and utilizes that determination to implement a policy decision that certain conduct should be further penalized. See Atlanta Oculoplastic Surgery, P.C., 691 S.E.2d at 224 ("Nor does . . . the existence of statutes authorizing double or treble damages attest to the validity of the caps on noneconomic damages. . . . [T]reble damages do not in any way nullify the jury's damages award but rather merely operate upon and thus affirm the integrity of that award.").

The right to trial by jury was held in equally "high estimation" by the framers of Tennessee's constitutions. This Court has characterized the right as "an essential element of public liberty" and as "vital . . . to the security of life, liberty, and property of the citizen."

State v. Hester, 324 S.W.3d 1, 50-51 (Tenn. 2010) (footnotes omitted) (alterations in original). Just thirty years after Tennessee became a State, this Court declared:

The right to a trial by jury . . . is too sacred to be intermeddled with by any power upon earth; too inseparable from human happiness to be submitted to the discretion of any human Legislature; it stands upon eternal foundations, and as time grows old it grows in veneration and stability.

Tipton v. Harris, 7 Tenn. 414, 419 (1824). Indeed, the Tennessee Constitution's use of "[t]he term 'inviolate' connotes deserving of the highest protection." Sofie, 771 P.2d at 721 . As a judge of Tennessee's highest court wrote in 1833:

*[T]he preservation of the trial by jury in all its purity is of the first importance; a strict adherence to its form, in all its parts, is not to be dispensed with, or to be considered as captious or trifling.* It is to be watched with a jealous assiduity, and *the slightest deviation from the established mode of proceeding regarded as affecting our dearest interests, and as such to be instantly put down*—bearing constantly in our minds, that it is one of the best guards of our rights, of our property, of our liberty and our lives.

Garner v. State, 13 Tenn. 160, 179 (1833) (Whyte, J.) (emphasis added).

Tennessee Code Annotated section 29-39-102(e) constitutes far more than a slight deviation from the established mode and function of the jury. It amounts to a legislative usurpation of the jury's constitutionally protected fact-finding function. As such, it should be "instantly put down" as a violation of article I, section 6. Garner, 13 Tenn. at 179.

For all these reasons, I dissent from the majority's decision and would hold that Tennessee Code Annotated section 29-39-102(e) violates article I, section 6 of the Tennessee Constitution.

_____
CORNELIA A. CLARK, JUSTICE