Peck, J.
Out of the many questions raised and debated in this case, two only are by the court deemed of sufficient importance to be noticed. One of the acts of extortion charged in the indictment, *162 was the demand and receipt, by colour of his office as clerk, of four dollars forty-three and three-fourth cents., lawful money of the State of Tennessee, for taking probate and certifying a deed of conveyance, containing two hundred acres, in five tracts, register’s fees inclusive; whereas, in fact, the lawful fees were two dollars and forty-five cents, and no more, for the services aforesaid.
In another count it is charged, that for his services in that behalf, he demanded and received, as clerk, the sum of two dollars twenty-five and three-fourth cents, lawful money, when in fact, the-lawful fees were twenty-five cents, and no more.
, It was proved on the trial, that the defendant received in payment a note on Yeatman and Woods; this, it is objected, is at variance with the allegation, and the conviction being on these counts is erroneous, not being warranted by the proof.
In the case of Johnston vs. The State, (Martin and Yerger’s Rep. 129,) this point was brought before the court. The charge was for gaming for money, and the proof that the playing was for bank notes; objection being made, as in this case, to the admissibility of the evidence, and the court having overruled the objection, it was held to be error: The cases are parallel; and these being the only counts on which he is found guilty, this point is sufficient to reverse the judgment.- The record, however, presents a question upon a point of practice, which a majority of the court deem it proper should, for the sake of settling the law and preserving uniformity, be considered, and the opinion of the court expressed.
One of the jurors during the trial became sick and had to be withdrawn. Another being called in his place, as provided by the act of 1817, ch. 99, Garner insisted on the right of challenge, and did challenge the juror; but. having exhausted his challenges in the first selection, the court overruled him and had the juror sworn, and the trial progressed. The act provides, that if, during the progress *163 of the trial, a. juror or jurors should becoine so unwell that, in the opinion of the court presiding, he or they are unable to serve, such may be permitted to withdraw, and the sheriff shall be directed to summon instanter a juror or jurors in his or their place or places, who shall by the direction of the court be sworn, and the trial proceed de novo.
A majority of the court are of opinion, that in denying the right of challenge the circuit court erred. The maxim, actes dei nerrdni facit injuria, applies directly to such a case. It can be easily perceived that injury may result fo the accused, if the right of challenge to the juror or jurors so called, be denied him; many of the jurors, by an act over which the accused has no controul, may be taken from him; they may have been amongst the first selected and before the challenge had been made, or at least before the number of challenges had been exhausted, If, as in the case before the court, the right of challenge be wholly denied in restoring the panel broken by the withdrawal of the sick juror, the accused, in effect} would be deprived of a very sacred right, the right of challenge.
It is true the act under consideration does not provide for the challenge, but it is equally true that right is not taken away. And the question occurs, what number of challenges shall be allowed him? The answer is obvious, that he must have the whole number applicable to the of* ■ fence. ■ Admitting that there may be challenges, there is no mode of proportioning the number so as to meet the case of the particular juror or jurors withdrawn; it ceases to become matter of calculation; andas the right remains, it remains to the whole extent.
To tolerate the principle, that no challenge in such a case can be allowed, then it would follow, that if eleven, or a majority of the sitting jurors, should by reason of ■sickness be withdrawn, the accused would in effect be wholly denied his challenges.
*164 As the practice stood before the passage of this act, . the challenge would have been allowed. Rather than construe the act so as to destroy the right of challenge; it would be preferable to construe it as intending to follow, the English practice; and this we would do were it not for the plain directory provision, “shall summon instanter a juror or jurors in his or their place or places, who shall by the direction of the court be sworn and the trial proceed.” Construe this act so as to give right of challenge, and it does not conflict with the clause in our constitution, which declares, “the right of trial by jury shall remain inviolate;” but if the right of challenge be denied, it certainly would.
In the construction we are giving, there is but a shade of difference between the practice before, and that established by the act. Whatever change, is on the side of safety for the accused. If the jury had been wholly broken up, after all the evidence had'been heard and opinions formed, the triers would have merged with the crowd, unrestrained in their intercourse, and yet subject to be called and again selected. Whereas, by the' plan under the act in question, no such thing takes place. The jurors remaining belong to the prisoner,'having been by him selected, and the gap accident has made, is filled by the usual trials of qualification to test indifference, which is so indispensable to the purity and safety of our mode of trial by jury.
In this case, therefore, the court ought to have allowed the number of challenges, when jurors were called to fill' the vacated places, that the law allows-in such offences.
We do not hold, as in England, that in consequence of the withdrawn juror the panel is broken up, and that an entire selection de novo must follow. 4 Taun. 309: 2 Leach, 620: 3 Camp. 208. The letter of the act which is directory; provides that jurors shall be called to fill the vacated,places; the jurors remaining will be as so many selected and sworn; because of those last called and *165 sworn, the pleadings will be read again, and the testimony heard de novo.