JAMES M. HARBISON

*v.*

BRIGGS BROS. PAINT MFG. CO.

354 S. W. 2d 464.

(*Nashville,* December Term, 1961.)

Opinion filed February 8, 1962.

KARL L. BISHOP, JOSEPH L. LACKEY, Nashville, for petitioner.

CATE & CATE, GEORGE H. CATE, JR., Nashville, for respondent.

536

Burnett, Justice, dissented.

Mr. Justice Felts delivered the opinion of the Court.

This was an action at law in tort for personal injuries. The Trial Judge entered a judgment of dismissal, upon the jury's response to a single interrogatory submitted by him to them. The Court of Appeals held this was error, but harmless, and affirmed. We granted plaintiff's petition for certiorari, and the case has been heard here.

The action was brought by Harbison against the Paint Company for damages for injuries alleged to have been caused him by its negligence. He averred it sold him a can of liquid "bug killer" to be used in killing fleas in

the basement of a residence; and that when he undertook to use it for that purpose, such liquid being dangerously inflammable, exploded, burst into flames, and severely burned him.

The negligence charged was that defendant sold him this highly inflammable liquid without warning him of its dangerous nature, and without having put on the can a label indicating that such liquid was dangerously inflammable, in violation of the statutes and of the regulations of the Fire Marshal. Defendant pleaded the general issue of not guilty.

Plaintiff demanded a jury, and the case was tried before the judge and jury, the trial commencing Thursday, November 19, and ending Monday, November 23, 1959. Each side adduced evidence to support his contentions. The pleadings and the evidence presented these sharply contested issues of fact:

(1) Whether or not defendant sold and delivered to plaintiff the can of liquid in controversy; (2) whether or not defendant was guilty of negligence proximately causing plaintiff's injuries; (3) whether or not plaintiff was guilty of proximate contributory negligence; and (4) whether or not plaintiff suffered the damages in the sum claimed, or in any sum.

At the close of the evidence, there was no motion for a directed verdict. The Trial Judge did not submit the case to the jury, either generally, or specially upon these litigated issues of fact. Instead, over plaintiff's objection, His Honor submitted only one interrogatory asking the jury to answer issue (1), telling them if they answered it "No," in favor of defendant, that would end the case,

but if they answered "Yes," in favor of plaintiff, they would have to consider additional issues that would be submitted to them. His instructions to them were as follows:

THE COURT: Gentlemen of the Jury, the Court in its sound discretion, has decided to submit to you a special issue in this case now on trial in which Jim Harbison is the plaintiff, and Briggs Brothers Paint Company, Incorporated, is the defendant, and in which the plaintiff sues the defendant for $50,000 damages for alleged personal injuries. The special issue which is submitted by the Court, and which I am going to hand you, is as follows:

"Did or did not the plaintiff, on July 9, 1958, receive a can with the words, 'Bug killer' on it marked Exhibit 2 to the plaintiff's direct examination, containing a liquid product mixed by the defendant Company, its agents or servants, and delivered by its agents and servants.

"Now, at the bottom I have placed these words, 'We find for the Plaintiff,' and answer Yes, or 'We find for the defendant,' and answer no.

"I charge you further that if you should return a verdict for the plaintiff on this issue—that is, that you find the plaintiff did receive such a can, and so forth, then there will be additional issues to be submitted to you, and which arise from the pleadings in the case. If, on the contrary, you should return a verdict for the defendant, on the issue now submitted to you,—that is, that the plaintiff did not receive such a can, and so forth, then that verdict would be con-

clusive of the case, and the legal effect would be to exonerate the defendant from liability.''

Under these instructions, the jury retired to their deliberations, and after having done so, returned into court and reported that they had found issue (1) in favor of defendant and answered: ''No.'' The Trial Judge accepted this response on issue (1), with the other issues undetermined, and entered judgment upon it dismissing plaintiff's suit.

Plaintiff appealed in error to the Court of Appeals and assigned errors upon this action of the Trial Judge in submitting, not the whole case, but only this one issue with the above instruction, to the jury, and in dismissing his suit upon the jury's response to this one issue. He insisted such action was harmful and reversible error because:

(1) Its effect was to upset the freedom and impartiality of the jury, since they had served longer than the regular term of jury service, and were impatient and anxious to be relieved, and when they were told that by finding for defendant they could at once relieve themselves, but if they found for plaintiff they would be further held to consider additional questions to be submitted, this led them to find for defendant as the shortest and easiest way out.

(2) In these circumstances, the partial manner in which this case was submitted to the jury deprived plaintiff of his constitutional right of trial by jury; that is, his right to have a free and impartial jury, under proper instructions by the judge as to the law, determine all the controverted issues of fact in the case.

The Court of Appeals held that our statute (hereinafter quoted), providing for submission of special issues to the jury, did not authorize such submission "in piecemeal," one issue at a time; that all of the issues should have been submitted together; but that this error was harmless under our harmless error statute (T.C.A. sec. 27-117), because the jury's negative response to this one issue determined the whole case and rendered all other issues immaterial.

Plaintiff here contends that while the Court of Appeals properly held that the Trial Judge erred in submitting only the one issue and in giving this instruction to the jury, that Court erred in holding such error was harmless, and should have held that it deprived plaintiff of his constitutional right of trial by jury and was not saved by the harmless error statute.

The right of trial by jury, the most valuable right in our Bill of Rights, is guaranteed by our Constitution (Art. 1, sec. 6) in these words: "That the right of trial by jury shall remain inviolate * * *." And it is further safeguarded by a number of other provisions of our Constitution.[1]

---

[1] (a) Art. 1, sec. 8: "No man shall be * * * deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

(b) Art. 1, sec. 9: "That in all criminal prosecutions, the accused hath the right to * * * a speedy public trial, by an impartial jury in the County in which the crime shall have been committed."

(c) Art. 1, sec. 19: "* * * in all indictments for libel, the jury shall have the right to determine the law and the facts, under the direction of the court, as in other criminal cases."

(d) Art. 6, sec. 9: "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."

(e) Art. 6, sec. 14: "No fine shall be laid on any citizen * * * that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers who shall access the fine at the time they find the facts * * *."

■ The right of trial by jury, as thus guaranteed by our Constitution, is the right as to existed at common law up to the time of our separation from England and the formation of our Constitution. *Garner v. State,* 13 Tenn. 160, 176-178; *State v. Sexton,* 121 Tenn. 35, 41, 114 S.W. 494; *Manning v. State,* 155 Tenn. 266, 275, 292 S.W. 451.

■ That was the right to have a jury trial in civil actions and criminal prosecutions at common law. It did not extend to suits of an equitable nature in a court of chancery, the right to a jury trial in such suits being conferred only by statute (T.C.A. secs. 21-1011 to 21-1016), not guaranteed by the Constitution. *Hunt v. Hunt,* 169 Tenn. 1, 10-11, 80 S.W.2d 666; *Pass v. State,* 181 Tenn. 613, 617, 184 S.W.2d 1; *Moore v. Mitchell,* 205 Tenn. 591, 594, 329 S.W.2d 821.

At the time of the formation of our Constitution, an incident of the right of trial by jury at common law was that the jury, under proper instructions from the judge as to the law, had the right to decide *all the issues of fact,* to give a general verdict, compounded of law and fact, in favor of one side or the other. The jury also had the right, at their option, to return a special verdict, finding the ultimate facts in issue and leaving their legal consequences to the judge, who entered judgment on the facts found, *if they were legally sufficient.* The jury, however, could not be required to return a special verdict, or to give answers to interrogatories submitted to them, but were privileged to decline to find other than a general verdict. Thayer's Preliminary Treatise on Evidence (1898), 137-175; Morgan, A Brief History of Special Verdicts and Special Interrogatories (1923), 32 Yale

L.J. 575-592; Wicker, Special Interrogatories to Juries in Civil Cases (1926), 35 Yale L.J. 296-307.

"As matter of history, we know that the jury, on the whole, successfully stood out against these attempts [by judges to compel special verdicts]; and that in most cases their right was acknowledged. But now it is remarkable how judges and legislatures in this country [United States] *are unconsciously travelling back towards the old result of controlling the jury,* by requiring special verdicts and answers to specific questions. * * * Doubtless the judges at common law have always exercised a limited power of questioning the jury about their verdicts. But the general, common-law right of the jury to refuse to answer such questions and to give a short, general verdict has been acknowledged" (italics ours). Thayer, supra, pp. 218-219.

Professor Morgan says:

"It, therefore, seems safe to assert that at common law the jury almost from the beginning had the right to return a general verdict in all civil cases and in most criminal cases, and that by the close of the eighteenth century it had acquired this right in all criminal cases." Morgan, supra, p. 591.

Referring to the practice as to answering special interrogatories, Professor Morgan further says:

"The later English cases seem to accept without argument the view that the judge may examine the jury to ascertain the basis of its general verdict but *may not without the consent* of the *parties* and the *jury charge the jury to return answers to special questions with the general verdict.*

"In the United States the submission of special interrogatories, answers to which are *to accompany the general verdict,* is generally recognized as proper at common law. The genesis of the practice is found in the custom of the judges, adopted from England, to catechise a jury as to its reasons for an unanticipated verdict. The matter is now usually governed by statutes" (italics ours). Morgan, supra, p. 592.

In this connection, Dean Wicker says:

"Under the present English practice, it is the privilege of the jury to decline to find any other than a general verdict, even though the judge requests them to give a special verdict; and in the absence of consent of the parties and of the jury it is not proper for the trial judge to direct the jury to return answers to special questions with their general verdict. After a general verdict has been returned, the trial judge is not entitled to ask any further questions of the jury for the purpose of ascertaining the grounds for the verdict" (citing cases). Wicker, supra, 35 Yale L. J. 297.

Another incident of common law trial by jury is the separation of function by which the jury tries disputed issues of fact; and the judge, matters of law and all other questions (*Whirley v. Whiteman,* 38 Tenn. 610, 616-617; *State ex rel. Myers v. Brown,* 209 Tenn. 141, 351 S.W.2d 385, 388). Devices for separating law from fact were demurrer to the evidence (*Hopkins v. Nashville C. & St. L. Railroad,* 96 Tenn. 409, 453-455, 34 S.W. 1029, 32 L.R.A. 354) and, later, motion for directed verdict (*Greenlaw v. Louisville & N. R. R. Co.,* 114 Tenn. 187, 191, 86 S.W. 1072; *Tyrus v. Kansas City, Ft. S. & M. Railroad,* 114 Tenn. 579, 593, 86 S.W. 1074); but *"there can be no con-*

*stitutional exercise of the power to direct a verdict"* on *facts in dispute* (italics ours) (114 Tenn. 594, 86 S.W. 1074).

·Otherwise stated:

"It is the *indisputable right* of every litigant, upon seasonable and appropriate request, to have *every material issue of fact* on which he has introduced material testimony submitted to the consideration of the jury, with proper legal directions in respect of the verdict to be returned, *upon the hypothesis that such testimony shall be found to be true"* (italics ours). *Memphis Street Ry. Co. v. Newman,* 108 Tenn. 668 669, 69 S.W. 269.

As stated, the right to trial by jury, guaranteed by our Constitution, is the right as it was at common law— with the right of the jury, at their option, to return a special verdict or a general verdict, but with the privilege to decline to return any but a general verdict, which general verdict is "held to embrace every issue" unless expected to (T.C.A. sec. 20-1318).

We have no case holding that the jury may be required to render a special verdict, though a jury may be instructed to return a special verdict, in the event they cannot agree on a general verdict. *Keith v. Clarke,* 72 Tenn. 718. In *Louisville & N. R. R. Co. v. Frakes,* 11 Tenn.App. 593, 641, Presiding Judge Faw said:

" 'the privilege of the jury to decline finding any other than a general verdict' * * * is, in our opinion, too firmly imbedded in the practice in this State to be disregarded by the trial courts" (11 Tenn.App. 641).

■ We think that this is a sound and accurate statement; that by the common law of this State, a jury, under proper instructions from the judge, has a right to decide all the issues of fact, to render a general verdict on the whole case for one side or the other, and to decline to render a special verdict.

■■ It should be noted there is a difference between a special verdict and special findings in response to interrogatories or issues submitted to the jury. A special verdict is in lieu of a general verdict, and must find all the ultimate facts in issue, in order to form the basis of the judgment to be rendered. But special issues or interrogatories are put to the jury to elicit their answers *to accompany their general verdict* for the purpose of ascertaining the basis of that verdict and testing its consistency with such answers. 53 Am. Jur., Trial, sections 1063, 1064, 1065; Morgan, supra, 32 Yale L.J. 575, 588, 591; Wicker, supra 3 Yale L.J. 301; Anderson, Special Issues of Fact in Tennessee: A Look Behind the General Verdict, 22 Tenn.L.Rev. 1039, 1047; Tennessee Procedure in Law Cases, Higgins and Crownover, secs. 1515a-1515j.

"There is * * * a manifest difference between a special verdict and the finding of the facts in answer to interrogatories propounded to the jury. A special verdict is in lieu of a general verdict, and its design is to exhibit all the ultimate facts, and leave the legal conclusions entirely to the court * * * Findings of fact in answer to interrogatories *do not dispense with the general verdict* * * * A special verdict covers all the issues in the case, while an answer to a special interrogation may respond to but a single inquiry, pertain-

ing merely to one issue, essential to *the general verdict.*" *Morbey v. Chicago N. W. Ry.*, 116 Iowa 84, 89, 89 N.W. 105, 107 (citing authorities) (italics ours).

So, it is in the light of this background of common law that we must read the statute, above referred to, on which the learned Trial Judge seems to have based his action. That statute originated as section 10346 of the Code of 1932, and is in these words:

"10364. *Special issues.*—The trial judge, in his discretion, especially where the questions for solution are several or involved, may direct and supervise the formulation of special issue or issues of fact for submission to and answer by the jury. The response or responses of the jury shall have the force of other verdicts at law."

This statute was re-enacted without change as T.C.A. sec. 20-1316, though given by the compilers the heading, "Special Verdicts." These words, however, do not change or affect the construction to be given the statute.

It is a familiar rule that a statute is to be construed with reference to the common law, and does not change the common law further than it expressly declares or necessarily implies. *Snyder v. McEwen*, 148 Tenn. 423, 429, 256 S.W. 434; *Linder v. Met. Life Ins. Co.*, 148 Tenn. 236, 243, 244, 255 S.W. 43; *Olsen v. Sharpe*, 191 Tenn. 503, 507, 235 S.W.2d 11.

Also, this statute, like our harmless error statute, is not to be construed so as to deny the right to a fair and impartial trial by jury as guaranteed by the Constitution. *Manning v. State*, supra, 155 Tenn. 276, 292 S.W. 451.

It does not purport to do that. It does not purport to abolish the common law mode of jury trial by which the jury, under proper instructions by the judge as to the law, has the right to determine all the issues of fact and render a general verdict on the whole case; nor does it attempt to change the common law rule that the jury has the right to render a special verdict or "to decline finding any other than a general verdict."

It merely provides that the trial judge may direct and supervise the submission of special issue or issues of fact to the jury and that their response or reponses shall have the force of other verdicts at law; that is, that such special issues or interrogatories, with the jury's answers thereto, are to be taken with the general verdict, and a judgment rendered thereon by the judge.

█ This statute is more or less similar to statutes which have been enacted in the majority of the states of the United States, providing for the submission of special interrogatories to the jury, and their answers thereto to be returned with their general verdict, and that in case of conflict between such answers and the general verdict, the answers control. Such statutes have been held not to infringe the constitutional right of trial by jury. *Walker v. New Mexico & S. P. R. Co.* (1897), 165 U.S. 593, 595-598, 17 S.Ct. 421, 4 L.Ed. 837, 842. For a discussion of such statutes, see Wicker, supra, 35 Yale L.J. 296-301; see also, Amended Federal Rules of Civil Procedure (Oct.1961), Rule 49, 28 U.S.C.A.

The view above expressed as to the construction of this statute (T.C.A. sec. 20-1316) is supported by the authors of Tennessee Procedure in Law Cases, Higgins & Crownover, supra, secs. 1515a-1515j; and by the Court

of Appeals in *Lenoir Car Works v. Littleton,* 41 Tenn. App. 323, 331, 293 S.W.2d 585, where it is said:

" 'We are of the opinion that the Code section just quoted does not change the rule [of the common law right of the jury to return a general verdict with its responses to the special interrogatories], and that notwithstanding the responding of the jury to special issues, *they should be advised by the court of their right to return along with the special answers their conclusions generally,* that is, that they find for the plaintiff or for the defendant, and the court may still accept and act upon the *general verdict* of the jury, provided there be nothing inconsistent therewith in the special findings.' Sec. 1515e, p. 580'' (41 Tenn. App. 331, 293 S.W.2d 585) (italics ours).

Under such statutes as those above referred to in other states, the great weight of authority is that it is error for the judge to inform the jury of the effect their answers may have upon the case because such information would almost necessarily defeat the object to be secured by the answers to such interrogatories. Wicker, *supra,* 35 Yale L.J. 302-303. In *Coats v. Town of Stanton,* 90 Wis. 130, 136, 62 N.W. 619, 621, the court said:

"The jury had no right to be informed how any particular answer to a special question would affect the case, or what judgment would follow in consequence of it, for to impart such information would almost necessarily defeat the object intended to be secured by a special verdict, or answers to particular questions in connection with a general verdict. The object of the law is to secure fair and impartial answers to such questions, free from bias or prejudice in favor of

either party or in favor of or against a particular result, and to guard against the danger of the result being affected or controlled by favor or sympathy, or by immaterial considerations.''

■ So, we agree with the Court of Appeals that the learned Trial Judge erred in this case. The plaintiff had a constitutional right to have every issue of fact made by the pleadings and the evidence submitted to the jury, with proper instructions by the judge, ''upon the hypothesis that such testimony shall be found to be true.'' (*Memphis Street Ry. Co. v. Newman,* supra, 108 Tenn. 666, 669, 69 S.W. 269). *Tyrus v. Railroad,* supra, 114 Tenn. 594, 86 S. W. 1074; *Morgan v. Tennessee Cent. Ry. Co.,* 31 Tenn.App. 409, 422, 216 S.W.2d 32, 37.

But we cannot agree with the Court of Appeals that the error of the Trial Judge was harmless. It immediately touched the constitutional right of plaintiff, and cannot be saved by the harmless error statute. *Dykes v. State,* 201 Tenn. 65, 68-69, 296 S.W.2d 861, and cases there cited; *Tenn. Gas. Trans. Co. v. Vineyard,* 191 Tenn. 331, 333, 232 S.W.2d 403, 20 A.L.R.2d 279; *McClard v. Reid,* 190 Tenn. 337, 342-345, 229 S.W.2d 505.

It is urged for defendant, respondent here, that the Trial Judge's error did not harm plaintiff, because the jury's answer to issue (1) was determinative of the whole case—that the finding that defendant did not supply the can in controversy to plaintiff disposed of the case and necessarily rendered all the other issues immaterial.

Here, the fallacy is that the answer to issue (1) is not determinative of the case; it may be determinative

if answered one way, but not if answered the other way. To take the jury's answer for defendant as determinative of the case is to assume such answer was valid, when, in fact, it was not valid, but was the result of the erroneous submission to the jury.

Another fallacy is that this reasoning overlooks the fact that plaintiff had a constitutional right to have all the issues of fact submitted to the same jury at the same time; and that this answer is the direct result of the violation of plaintiff's constitutional right of trial by jury.

The record shows that this was the last case heard by this jury. The jury had completed their regular term of service on Friday, November 20th, and, expecting to be released on Friday, they had made arrangements to go back to their jobs or their businesses on Monday following, and so expressed themselves in court, but were, nevertheless, held over to further consideration of the case Monday.

In these circumstances, the case was submitted to the jury on issue (1) and they were told that a finding for defendant would end the case, but a finding for plaintiff would require them to be further held to consider additional issues to be submitted. Human nature being what it is, such a situation would naturally give defendant an unfair advantage. It tended to subject the jury to the temptation of a conflict of their interest with their duty, and to destroy the fairness and impartiality to which both parties were entitled.

Of course, nothing above said in this opinion is intended in anywise to reflect upon the learned Trial Judge, who

is outstanding and well known for his painstaking consideration in all cases and for his exalted conception of judicial duty.

For these reasons, the judgments of the Court of Appeals and the Circuit Court are reversed, the answer of the jury on issue (1), is set aside, and the case is remanded for a new trial. Costs of the appeal in error are adjudged against defendant-respondent.

PREWITT, CHIEF JUSTICE, and WHITE and DYER, JUSTICES, concur.

BURNETT, JUSTICE, dissents.

BURNETT, JUSTICE, (dissenting).

I cannot agree to the majority opinion herein.

This suit originated in the Circuit Court wherein Harbison sued Briggs Brothers for damages for personal injuries, alleging that on July 9, 1958, he purchased two gallons of liquid bug killer from Briggs Brothers which he applied in the basement of a residence to kill an infestation of fleas, and that after it was applied the substance suddenly exploded or burst into flame and severely burned him. He predicated his charge of negligence on the ground that defendant sold him a highly inflammable substance without warning him of the danger of its use, and violated certain State statutes and regulations as promulgated by the Fire Marshal of the State in that the defendant failed to label the containers, in which the substance was allegedly purchased and delivered to him, so as to indicate the inflammable nature of the liquid substance contained therein.

After all the evidence was introduced, both by plaintiff and by defendant, the trial judge on his own motion sub-

mitted a special issue to the jury and this body returned a verdict in favor of the defendant on this special issue. The trial judge being of the opinion that this was determinative of the entire lawsuit dismissed the case. An appeal was seasonably perfected to the Court of Appeals, and that court held that under the practice in this State it was error to submit special issues, as done herein, in a law case, and that sec. 20-1316, T.C.A., did not permit such a practice in a law case. This question is not before us on certiorari because of what is hereinafter said. The Court of Appeals though after finding this error concludes for reasons hereinafter stated that such error was harmless, because the merits of the case have been reached and there was no reversible error therein. That court says:

"Where an issue has been submitted to a jury which is determinative of a lawsuit, and this issue has been passed on by the jury, will the case be reversed because other issues, subordinate in order of consideration, and immaterial in view of the disposition made of the controlling issue, were not submitted? We think the question answers itself in the negative."

We fully agree with this conclusion. We granted certiorari because members of this Court disagreed in the conclusion of the Court of Appeals as to whether or not the error was harmless.

At the conclusion of the case, after both parties had rested, the trial judge on his own motion informed the parties that he had concluded upon the allegations of the declaration and the proof offered that the case could be simplified by submitting an issue to the jury which he had framed. The issue he submitted to the jury was:

"Gentlemen of the Jury, the Court in its sound discretion, has decided to submit to you a special issue in this case now on trial in which Jim Harbison is the plaintiff, and Briggs Brothers Paint Company, Incorporated, is the defendant, and in which the plaintiff sues the defendant for $50,000.00 damages for alleged personal injuries. The special issue which is submitted by the Court, and which I am going to hand you, is as follows:

"Did or did not the plaintiff, on July 9, 1958, receive a can with the words, 'Bug Killer' on it marked Exhibit 2 to the plaintiff's direct examination, containing a liquid product mixed by the defendant company, its agent or servants, and delivered by its agents and servants.

"Now, at the bottom I have placed these words, 'We find for the Plaintiff', and answer Yes, or, 'We find for the Defendant', and answer No.

"I charge you further that if you should return a verdict for the plaintiff on this issue—that is, that you find the plaintiff did receive such a can, and so forth, then there will be additional issues to be submitted to you, and which arise from the pleadings in the case. If, on the contrary, you should return a verdict for the defendant, on the issue now submitted to you,—that is, that the plaintiff did not receive a can, and so forth, then that verdict would be conclusive of the case, and the legal effect would be to exonerate the defendant from liability."

In order to see why the trial judge submitted the issue above quoted it is necessary for us to briefly review

the record in this case. The record is in two volumes, consisting of something like 300 pages. The plaintiff, Harbison, bought certain products from the defendant, Briggs Company, on July 9, 1958, and he as a contractor was doing certain work in a house and applied the substance, which he said was delivered to him by Briggs Brothers in a certain can which he identified and exhibited to the jury, which was marked Exhibit 2, and that as a result of his spraying this stuff, etc., an explosion occurred which severely burned him. The record is replete on both sides by testimony of experts and others as to the inflammability of the substance, and Fire Marshals, etc., testify as to the rules and regulations and things of that kind. This can, which Mr. Harbison testifies in at least three places in the record as being the can that the stuff that blew up was delivered to him in, stated on it, "Odorless paint Thinner, 1 Gallon U. S. Liquid Measure, Manufactured by Post Brokerage Company, Nashville, Tennessee". He states very positively and emphatically that this Exhibit No. 2 with these identifications on it, as well as the identification "Bug Killer" written by crayon on the can, was the can that exploded. There is no evidence to the contrary by the plaintiff that the liquid, whatever it was, that caused the damages complained of, did come in this can. This was conceded in argument before us as it must be because this is what the record shows.

The defendants, Briggs, several of his officers and the man who took the order which was sent to Mr. Harbison, all testify positively that they did not deliver any such can to Mr. Harbison. They introduced and showed the labels that were on their products which are Briggs Brothers' products, and they testify positively that they

have never had in their place, never bought any or had any can there, with the Post peoples' label on it, or such a label as is on the can which Harbison introduced. There is also proof, of course, that the stuff that was delivered to Harbison had the Briggs Brothers Company's label on it when it came out of the shelf where these things are kept. In other words, they testify to a state of facts which was absolutely to the contrary to what Harbison had testified.

Thus the reason plainly appears why the trial judge concluded, as he did, and submitted the special issue that he did to the jury, because from this proof the issue was disputed as to whether or not the can did or did not come from Briggs Brothers. The undisputed proof on the part of the plaintiff and positive swearing is that the stuff which he complains was faulty was in this specific can, so thus the only issue on that part was, if this was the can and if this can came from somebody else, thus Briggs Brothers would not be liable, because there is nothing whatsoever in the proof that the stuff that injured him came from any other can than this as introduced. This made a determinative issue which was necessary for a jury to consider before arriving at other factual issues in the case, and thus it was that the trial judge concluded that this issue would be determinative of the matter.

We frankly under our practice agree, as all of our cases hold, that every material issue of fact in a lawsuit should be submitted to a jury. Of course, the obvious reason for this is to prevent the trial judge from passing on disputed issues of fact when this is the problem for the jury, and by submitting special issues certain issues

bearing thereon might on other features of the lawsuit be left out. In other words, our practice is merely following the old common law rule. We hereinafter will refer to the common law rule in reference to certain constitutional questions. What we say there in reference to the Constitution is equally applicable to rules of practice in this State. Under the ancient form of the common law rule and the variance from it under practice, unless there is prejudicial error committed therein, certainly a case should not be reversed and sent back for another trial.

The Supreme Court of the United States in *Gasoline Products v. Champlin Refining Co.*, post, speaking through Mr. Justice Stone, a great lawyer, a great teacher of law and a great Justice of the Supreme Court of the United States, in commenting on the application of this common law rule in reference to whether or not in the United States Constitution giving the right of trial by jury was so binding as to make it erroneous not to submit all the issues to the jury at once, had this to say:

"But we are not now concerned with the form of the ancient rule. It is the Constitution which we are to interpret; and the Constitution is concerned, not with form, but with substance. *All of vital significance in trial by jury is that issues of fact be submitted for determination with such instructions and guidance by the court as will afford opportunity for that consideration by the jury which was secured by the rules governing trials at common law.*" (Emphasis ours).

We cite hereinafter many cases and illustrations of the applicability of our Constitution with reference to

jury trials and the division of matters submitted to a jury, whether it is divisible or not, and all of these apply equally to a matter of practice as is herein held to be erroneous, but so long as this erroneous conclusion did not bar the plaintiff of his right to a trial by jury on a determinative issue of fact and so long as he has had this right to a trial by jury, procedural or practical errors certainly have not harmed the plaintiff, or in any wise done prejudice to him.

It has long been the rule, both by duty of the appellate courts as well as by statute, that if errors are not prejudicial the case will not be reversed, and it must appear affirmatively that the result of the trial has been affected thereby for a reversal. For more than a hundred years there has been a statute on the statute books of this State, which says (sec. 27-116, T.C.A.):

"No judgment, decision, or decree of the inferior court shall be reversed in the appellate courts, unless for errors which affect the merits of the judgment, decision or decree complained of."

It plainly appears from reading this record that there is no such error herein as to cause a reversal of this case.

The Court of Appeals makes this very apt statement:

"Plaintiff in error also argues in support of the contention that error was prejudicial, that if all of the issues had been submitted the result would likely have been different; that more time would have been spent in argument and the jury might have considered other issues and arrived at a different result.

"We cannot follow this contention. In the first place, the argument was limited to fifteen minutes by

stipulation of counsel agreed to by the court. In the second place, the issue submitted to the jury by the trial judge would have been the first issue the jury would have had to pass on, all other issues being subordinate thereto, and we must assume indulging the presumption of regularity, that the jury's action in regard thereto would have been the same in that event. In order to accept plaintiff in error's argument we would have to assume the jury would have allowed its consideration of the first issue, the origin of the inflammable substance, to be confused or its discrimination with respect to the evidence in regard thereto to be blunted by reason of other issues such as negligence, contributory negligence and the nature and extent of the injuries and their value at law. This, we cannot do.''

Obviously from what has been said above the question for determination in this lawsuit is whether or not under the procedure as had herein this constitutes a violation of Article 1, Section 6 of our Constitution, providing ''That the right of trial by jury shall remain inviolate * * *'' and Amendment 7 of the United States Constitution making similar provisions.

This right of trial by jury, which is preserved in the Constitution, is said to be the right that was in force and use according to the course of the common law. Under the ancient common law doctrine, it was the practice that the whole of a case had to be submitted to a jury and it could not be divided in any of its particulars, either by the trial court or any appellate court. If there was error in one particular it was necessary for the appellate court to reverse the whole case and

remand it all for a new trial. This doctrine in its extreme was exemplified in *Edie v. East India Co.*, 1 W.Bl., 295, which was an action on two bills of exchange, where there was a verdict for the plaintiff in one of them and for the defendant on the other. In setting aside this verdict because of the error in the finding for the defendant, Lord Mansfield said: "There is a verdict in part for the plaintiff; * * * but *for form's sake* we must set aside the whole verdict." The only reason given by this the greatest of English Judges for this practice was that it was required for form's sake. It is fair thus to assume, since this was the only reason he gave, that no better reason existed. Due to this fact the overwhelming majority of jurisdictions in this country, including the United States Supreme Court (*Gasoline Products v. Champlin Refining Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188, have over the years adopted an entirely different view; and have arrived at the practice of dividing verdicts, thus a verdict can be sent back by the appellate court for an error in one particular and not in the other, and this does not deprive the parties of their constitutional rights to a jury trial.

What is a "jury trial" under our Constitution, the United States Constitution, and most constitutions, has been well said by Mr. Justice Gray in *Capital Traction Co. v. Hof,* 174 U.S. 1, 13, 43 L.Ed. 873, 19 S.Ct. 580, 583, 585:

"'Trial by jury,' in the primary and usual sense of the term at common law and in the American constitutions, is not merely a trial by a jury of 12 men before an officer vested with authority to cause them to be summoned and impaneled, to administer oaths to

them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by jury of 12 men in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence. This proposition has been so generally admitted, and so seldom contested, that there has been little occasion for its distinct assertion. Yet there are unequivocal statements of it to be found in the books.''

The substance of this doctrine has been recognized by the appellate courts of this State for over a century. A particularly apt commentary thereon and an excellent statement was made a hundred years ago by Judge McKinney in *Whirley v. Whiteman,* 38 Tenn. 610, at page 616. In that opinion this Court at that time, a hundred years ago, expressed recognition of the practice of requiring a special verdict upon facts in order that the court may make an application of law. The Court likewise recognized then when it appears that there is no conflict in the evidence the facts are all admitted, and would not be submitted to a jury. If the Court may apply the law upon a special verdict settling controverted facts, why may not the court make application of law upon facts which are undisputed, that are all admitted by the evidence? Of course, we don't have that exact thing here, but we have the determinative issue submitted to a jury. If the determinative issue is submitted to them and they pass on it, why submit incidental facts?

It has long been well established in this State that trial by jury is for the benefit of the parties litigant and that

either may waive and that neither is entitled to a trial by jury unless demand is made in compliance with sec. 20-1203 et seq., T.C.A. Jury trials are denied in Workmen's Compensation cases by statute (sec. 50-1018, T.C.A.) and such a denial is constitutional because the parties by accepting that statute (Workmen's Compensation) waive the right to trial by jury. *Scott v. Nashville Bridge Co.,* 143 Tenn. 86, 223 S.W. 844.

It has long been the well established practice of this State, supported by numerous authorities, that the right of each party to have the assistance and protection of the presiding judge, wherein he has the power to set aside the verdict for good cause, is a part of the litigant's right to a trial by jury, which is secured by the constitutional provision above. These statutes requiring litigants to demand a jury, if one is desired, at a particular stage of the litigation, describing the manner, etc., have been held constitutional time and time again, because the right of trial by jury in all jury cases is secured to everyone who does not waive it by the failure to demand it as required. *Garrison v. Hollins, Burton & Co.,* 70 Tenn. 684, and many others which can be found by Shepardizing this one case.

This right of trial by jury sanctioned by the above mentioned constitutional provision is a right to trial by jury as it existed and was in force and use according to the course of the common law under the laws and Constitution of North Carolina at the time of the formation and adoption of our Constitution in 1796. *Garner v. State,* 13 Tenn. 160. "This places our trial by jury in identity with that of North Carolina in force and use there in the year 1789; * *." *Garner v. State,* supra, page 176.

Thus we have seen that the courts have recognized that they have the right to direct a verdict and set one aside under proper circumstances. The courts likewise have the right, where there is a judgment that is valid as to one of the two defendants and is void as to the other, to reverse as to one and affirm as to the other. Merely because the case is thus divided and may be sent back there is no constitutional prohibition here. See *Bentley v. Hurxthal,* 40 Tenn. 378; and many other cases on related questions as set forth in Note 14 to sec. 27-117, T.C.A. This is merely cited to show that we recognized in this State the antiquity of the rule at common law as laid down by Lord Mansfield as here quoted, that there could be no division of a verdict.

A fair survey of the cases as reported by this Court in our appellate courts brings us to the conclusion that a statement made in *Simmons v. Fish,* 210 Mass. 563, 97 N.E. 102, applies to the application of the principle herein discussed. The Massachusetts court said this:

"* * * It has exercised the power in a great variety of cases touching divers kinds of issues involved in general verdicts. The guiding principle is that, although a verdict ought not to stand which is tainted with illegality, there ought to be but one fair trial upon any issue, and that parties ought not to be compelled to try anew a question once disposed of by a decision against which no illegality can be shown. Thus the parties and the commonwealth have been saved the expense, annoyance and delay of a retrial of issues once settled by a trial as to which no reversible error appears. * * If it is convinced upon a review of the whole case that the jury has settled the issue of lia-

bility fairly and upon sufficient evidence, so that disassociated from other questions it ought to stand as the final adjudication of the rights of the parties, * * *.''

From what has been said above it is obvious that because there is a division in the verdict where a portion of it has gone to a jury that this does not make the trial unconstitutional where it is sent back for a trial upon another portion thereof. As said above a majority of the courts in the country hold this way. Among those listed as holding that there may be a division under this constitutional limitation is the North Carolina case of *Burnett v. Roanoke Mills Co.*, 152 N.C. 35, 67 S.E. 30, wherein the Supreme Court of North Carolina held that there might be such a division without violating this constitutional provision of the North Carolina Constitution. We have cited authority from our own Court above that we are bound under our decisions to that of North Carolina because of our connection therewith. Thus it is for these reasons and many others I feel without question that from the way the matter was handled herein there has been no constitutional violation as the petitioner claimed, and that the whole matter should not be again retried by a jury.

In other words, what I have been trying to say is that there is no such violation of a constitutional right of petitioner to the extent whereby our harmless error statute would not be applicable as it was applied by the Court of Appeals (sec. 27-117, T.C.A.).

If the theory that a verdict of a jury is in all cases indivisible is correct then the books are full of cases where there has been a general, not a partial, new trial and they were to that extent wrongly decided. In the

estimate of the writer of this opinion the truth is that this theory of the indivisible verdict is fallacious; such verdicts being divisible are not, according to the circumstances of the particular case. For instance, we in *Huffman v. State,* 200 Tenn. 487, 292 S.W.2d 738, held that in a criminal case although the constitutional provision in that case (Sec. 9, Art. 1 of our Constitution) and that of the Federal Constitution are different applying to criminal cases, the rule of reason has to be the same. We held in that case on good authority that Huffman would only be sent back for a trial to fix the amount of the verdict, and consequently there was a division in this criminal trial.

If it should be established as a rule in this State that the judgment below must at all times be dealt with as an entirety, it would be establishing a purely arbitrary rule and when carried to an extreme would result in many absurdities. Common sense and reason dictate clearly to the contrary.

We, of course, come down to the application of the harmless error statute (sec 27-117, T.C.A.), which is nothing more than what the courts of this State did long prior to the passage of such an Act. The application of such a principle was naturally a judicial function which the court could carry out through its inherent powers and right. The passage of this Act fifty years ago, was merely the implementation by the Legislature of what was a judicial right and duty theretofore. Some members of the bar have never gotten accustomed to the fact that when there is no harm done there shall not be a reversal; that it must be a prejudicial error; and have stuck to the argument and theory that for any error

a case should be reversed. This certainly does not conform to common sense, and the practice of law as it should be practiced. "The test (determining whether or not the error is prejudicial) is said to be whether, in the circumstances of the particular case, it sufficiently appears that the rights of the complaining party have been injuriously affected by the error." 3 Am.Jur., page 563, sec. 1007. Of course, there is no set invariable rule upon which the application of the harmless error statute can be applied, or the inherent jurisdiction of the court can be applied, to these things.

Clearly, under the facts of the present case, the writer feels that the Court of Appeals properly applied this rule of reason. This Court more than fifty years ago settled the proposition here raised in the present suit when it applied its inherent jurisdiction under a much stronger, using the word "stronger" in favor of the petitioner, case than we have here. The case we are talking about is the case of *Greenlaw v. Louisville & N. Railroad,* 114 Tenn. 187, 86 S.W. 1072. In this case the trial court had directed a verdict because of contributory negligence. The Court in the opinion goes on to show that this was clearly error and that it should have been submitted to the jury as it constituted a jury question, and the court had no right to comment on the facts or assume one state of facts, and that all the facts should have been submitted to the jury (that is the argument in the present case), but the Court then said conceding this to be error, "We are of opinion, therefore, that the merits of the case have been reached, and that there is no reversible error in the action of the court below, and the judgment of the court below is affirmed, with costs."

If we are to follow the doctrine of *stare decisis,* it certainly is obligatory on this Court in the present case to follow the case list cited, because therein the direct proposition without the statute requiring jury trials being argued or cited in that case, was nevertheless the direct proposition before the Court, because the Court was not allowing them a jury trial in that case. Many other cases in this State could be found supporting this proposition.

In one breath the majority opinion concedes (citing authority) that statutes giving the jury the right to render divisible verdicts are constitutional, while in the next breath it is held that such an act herein (a divisible verdict) is unconstitutional and thus the harmless error statute cannot apply. It is for this reason that this dissent is filed.