**Sheriff of Knox County, Joe C. FOWLER, Plaintiff–Appellant,**

v.

**The KNOX COUNTY MERIT SYSTEM COUNCIL, Howard Mullens, Joseph Swift and Herbert Moncier, and Lieutenant Cawood, Sergeant Parker, and Sergeant Ludwig, Defendants–Appellees.**

Court of Appeals of Tennessee, Eastern Section.

April 11, 1990.

Permission to Appeal Denied by Supreme Court Oct. 1, 1990.

Michael S. Ruble, Deputy Law Director, Knoxville, for plaintiff-appellant Joe C. Fowler.

Robert W. Ritchie, with Ritchie, Fels & Dillard, Knoxville, for defendant-appellee Knox County Merit System.

James A.H. Bell, Knoxville, for defendants-appellees Lieutenant Cawood, Sergeant Parker, and Sergeant Ludwig.

## OPINION

SANDERS, Presiding Judge, Eastern Section.

The Plaintiff–Appellant, Sheriff of Knox County Joe C. Fowler, appeals from a chancery decree affirming the Knox County Merit System Council's action in setting aside a lateral transfer of three officers from one division to another division of the Knox County Sheriff's Department.

The Plaintiff–Appellant, Joe C. Fowler, is the duly elected and qualified Sheriff of Knox County with all the attendant constitutional and statutory powers of that office, except as they may be modified or restricted by public act of private application, Chapter 326 of the Acts of 1970 (the Act). The Act established a merit system for the employees of the Sheriff's Department. It created a Merit System Council to administer the merit system and provided for its powers and duties. Pursuant to powers under the Act, the Merit System Council adopted "Policies and Procedures Governing the Operations of The Merit System for The Knox County Sheriff's Department" effective November 22, 1971, "Revised and Amended" January 1, 1973, October 4, 1974, and April 4, 1975. (Policies and Procedures.) The overall effect of the Act was to create a "civil service system" for the Sheriff's Department personnel and the Merit System Council to administer it.

The basis of the issues on this appeal has its beginning in November, 1986, when the City of Knoxville closed its city jail and turned it over to Knox County for operation. Upon receiving the responsibility of running and maintaining the jail, which had previously been the city's responsibility, Sheriff Fowler requested the Merit Council to create new positions to staff and operate the former city facility, now designated as the Knox County Intake Center. As a result he received authorization for one new captain, two new lieutenants, two sergeants, and fifteen detention officers, together with administrative support personnel. After receiving approval from the Merit Council to create and fill these positions pursuant to its rules and regulations, the Sheriff then sought and obtained funding for the positions from the Knox County Commission.

Under the merit system, when vacancies are to be filled, notice of the positions is posted and classified personnel may bid for promotion or transfer to fill the positions. Job bids were posted as required by the

merit system and a number of bids were received from classified personnel for the new jobs.

At this point it should be noted the personnel of the Sheriff's Department are composed of those who are in what is known as patrol and those known as detention. Those in patrol are the ones concerned primarily with law enforcement and those in detention are concerned primarily with looking after the prisoners being detained. The entire Sheriff's Department is divided into eight separate divisions and personnel is interchangeable in the different divisions if they meet the class and grade requirements. The patrol personnel has four divisions designated as A, B, C, and D divisions. Anyone in the system with the rank of sergeant or above is classified as supervisor personnel. The patrol division has an overbalance of supervisor personnel of approximately five persons of supervisor rank for each twelve persons below supervisor rank.

The Sheriff decided to transfer a captain, two lieutenants and two sergeants from the patrol divisions to fill these positions at the Intake Center rather than promoting people who bid on these new positions. This accomplished a two-fold purpose. It relieved the overstaffing of the patrol divisions of supervisor personnel and saved the county approximately $40,000 per year.

The officers did not want to be transferred from the patrol division to the Intake Center and filed a grievance with the Merit Council. The grievance alleged (1) "they had not met the minimum qualifications preferred for the jail position to which he has been transferred," (2) the "transfer was not lateral in nature, but involved a transfer from a separate distinct position to another different position for which he had not been trained," (3) the "transfer from the patrol division to the jail division was politically motivated," and (4) "said transfer will cause a reduction in his benefits in that, beginning in 1978, all officers of the patrol division were assigned 'take-home' patrol cars for transportation to and from work." At the time the grievance was set for hearing the captain and one of the lieutenants who had been transferred withdrew their grievances and the matter proceeded to hearing as to Lieutenant Cawood, Sergeant Parker and Sergeant Ludwig.

After the hearing was concluded the Merit Council did not file a joint finding of fact or conclusion reached by the Merit Council; however, each of the three members filed a written statement of findings. The majority found the transfers were not politically motivated. The only other issue on which there was a majority view expressed was number (4) of the grievance that the transfer would cause a reduction in benefits in that the officers would lose the use of the patrol cars for transportation to and from work. It was the conclusion of each of the Council members that the loss of this benefit constituted a demotion and, since Section 1203 of the Policies and Procedures Manual which governs demotions had not been followed, the Sheriff was without authority to make the transfers.

The Sheriff filed a petition for a writ of certiorari pursuant to T.C.A. § 27–8–101, *et seq.* The writ of certiorari was issued and upon the hearing the chancellor affirmed the action of the Merit Council primarily on a theory which was not advanced by any of the parties before.

The chancellor, in affirming the action of the Merit Council, based his conclusions on two things. First, he found Section 10 of the Act creating the merit system required the Merit Council to make rules governing lateral transfers of personnel. He found Section 15 of the Act provided transfers could be made only under rules established by the Merit Council and further found the Council had failed to adopt such rules. He therefore held the Sheriff was without authority to make the transfers. Second, he found "the term 'demotion' is not defined in the merit plan ..." and therefore it could not be said it was unreasonable or arbitrary for the Merit Council to find the loss of use of the vehicles was a demotion.

The Sheriff has appealed, saying the chancellor was in error. We must agree.

■ The chancellor's opinion, as pertinent to his finding there was no rule relating to transfers, said: "The merit system is governed by a private act, Chapter 326 of Private Acts of 1970.... Section 10 of the act provides for the Merit Council to adopt a classification plan, and make rules for its administration. Specifically, Section 10 provides:

"SECTION 10. The Council shall, as soon as practical after this Act becomes operative, adopt a classification plan and make rules for its administration. The position classification plan may, if desired, create different classes of positions within each position, whether or not such positions are covered under the merit system.

"The position classification plan shall show the duties, authorities, responsibilities and character of work required for each position and each class thereof. In consultation with the Sheriff, the Council shall determine the requirements of each position and class thereof as to education, experience, and capabilities, knowledge, and skill. The Council shall provide as far as practical, for the maximum flexibility in lateral transfer of personnel, particularly in those positions and classes of positions relating to law enforcement."

\*     \*     \*     \*     \*     \*

"Thus, the private act governing the Sheriff's Departments merit plan must first be looked to in determining the Sheriff's authority to act in personnel matters. It controls the underlying rights and obligations of the parties. The act expressly requires that transfers be made only under Council rules. Specifically the act provides:

"Section 15—*All employees in the classified service may be transferred from one position to another within and between classes of positions only under rules established by the council.* These rules may designate those classes of positions between which transfer may take place. (Emphasis added.)

The clear meaning of this statutory language is that the authority to transfer may come only from the merit plan..... The

merit plan, however, does not provide for any form of procedure for involuntary transfer.... This being the case, viewing the involved transfers as lateral as claimed by the Sheriff they cannot be sustained, because they are not pursuant to any merit plan procedure for filling a vacancy as required by Section 15."

Although the chancellor mentions in his memorandum opinion that a copy of the policies and procedures governing the operations of the merit system was in the file, he obviously overlooked Section 510 of that policies and procedures manual which relates to transfers. As pertinent here, it provides: "510. *SALARY ON TRANS-FER....* When an employee is transferred from a position of one class to a position of another class at the same grade, he shall continue to be paid at the same step in the range." The record before us supports the proposition the transfers made by the Sheriff were in compliance with this rule.

■ This brings us to the chancellor's finding that, since "demotion" was not defined in the merit plan, it was not unreasonable or arbitrary for the Merit Council members to find the loss of the use of the patrol cars was a demotion. While we agree there is no definition of the word "demotion" spelled out in the merit plan, reading the provisions of the plan which relate to demotions makes it clear a "demotion" of an employee is a reduction to a lower grade. The act itself makes no reference to "demotion"; it references only termination of employment and suspensions. However, the policies and procedures governing operations of the merit system speak to demotions in Section 510, *supra,* and Section 1203. As pertinent here, Section 1203 provides: *"1203. DE-MOTION* An employee may be demoted to a position of a lower grade, and for which he is qualified, for any of the following reasons:...." Section 510, as pertinent to demotion, provides: "When a regular employee is demoted to a lower grade, his salary shall be set at: (1) The step in the lower grade which provides the smallest decrease in pay, if the action is not for cause; or (2) Any appropriate step in the

lower grade that is less than his existing salary if the action is for cause."

After the Act creating the merit system was passed the Merit System Council adopted the policies and procedures governing the operations of the merit system. In doing so they adopted Sections 510 and 1203 relating to demotions. Those sections recognize a demotion as reducing an employee to a lower grade, and we think correctly so. Black's Law Dictionary, Fifth Edition, defines demotion as "a reduction to lower rank or grade, or to lower type of position." Having adopted rules and regulations which equate a demotion to a reduction in grade, we hold the Council members may not now equate demotion to the loss of the use of the vehicles for the purpose of depriving the Sheriff of his right to make the transfers. Except for the passage of the Merit System Act the officers would be employees at will pursuant to T.C.A. § 8–20–109. In speaking to the construction of statutes which affect pre-existing law, the court, in *In re Deskins' Estates*, 214 Tenn. 608, 381 S.W.2d 921 (1964), said:

It is a familiar rule that a statute is to be construed with reference to pre-existing law and that it does not change such law further than it expressly declares or necessarily implies. *Snyder v. McEwen*, 148 Tenn. 423, 439, 256 S.W. 434 [(1923)]; *Linder v. Met. Life Ins. Co.*, 148 Tenn. 236, 243, 244, 255 S.W. 43 [(1923)]; *Olsen v. Sharpe*, 191 Tenn. 503, 507, 235 S.W.2d 11 [(1950)]; *Harbison v. Briggs Paint Co.*, 209 Tenn. 534, 546, 354 S.W.2d 464 [(1962)].

*Id.* 381 S.W.2d at 922.

The decree of the chancellor is reversed along with the holding of the Merit Council. The grievances of Lieutenant Cawood, Sergeant Ludwig and Sergeant Parker are dismissed. The case is remanded to the trial court and the cost of this appeal is taxed to the Appellees.

GODDARD, J., and WILLIAM H. INMAN, Special Judge, concur.