IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2018

## RONNA LYN UEBER v. ANTHONY JAMES UEBER

**Appeal from the Chancery Court for Williamson County**
**No. 44714     Joseph Woodruff, Judge**

_____

**No. M2018-02053-COA-T10B-CV**

_____

This is an accelerated interlocutory appeal from the trial court's denial of Appellant's motion for recusal. Because the record contains insufficient evidence of bias requiring recusal under Tennessee Supreme Court Rule 10B, we affirm.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Chancery Court is Affirmed.**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Ronna Lyn Ueber, Franklin, Tennessee, *Pro Se*.

Gregory D. Smith, Brenton H. Lankford, and Ann Ralls Niewold, Nashville, Tennessee, for the appellee, Anthony James Ueber,

Russ Heldman, Franklin, Tennessee, *Pro Se*.

Robert Todd Jackson, Brentwood, Tennessee, *Pro Se*.

## OPINION

### I.    Background

This recusal appeal stems from two underlying rulings by the trial court. The first ruling concerns Appellant Ronna Lyn Ueber's divorce from Anthony James Ueber. The trial of that matter took place on February 12, 13, and 14, 2018, and the trial court's order

granting the divorce was entered on April 13, 2018. Attorneys Russ Heldman and Robert Todd Jackson represented Ms. Ueber during the divorce. On June 1, 2018, Messrs. Heldman and Jackson moved to withdraw based upon Ms. Ueber's non-payment of legal expenses and fees. Subsequently, they moved for permission to apply funds they had received as result of their representation of Ms. Ueber toward their outstanding legal fees, expenses and costs, and also sought a judgment for their remaining legal fees for representation in the divorce proceedings. A series of responses and other motions filed by Ms. Ueber then followed. Following a hearing on August 30, 2018, the trial court granted the attorneys' motion awarding unpaid attorneys' fees in the amount of $101,801.80. The trial court's September 25, 2018 judgment awarding unpaid attorneys' fees is the other ruling by the trial court giving rise to Ms. Ueber's recusal motion.[1] Messrs. Heldman and Jackson together with Mr. Ueber are the "Appellees" in this case.

Ms. Ueber filed her motion for recusal seven months after entry of the divorce ruling and two months after the hearing on the motion for attorneys' fees. Her motion filed on October 26, 2018 alleged that the trial court should recuse itself from both the divorce case and the ancillary matter regarding attorneys' fees for the following reasons:

> (1) Perceived Bias, (2) Actual Bias, (3) Loss of Impartiality, (4) Violation of Plaintiffs Constitutionally Guaranteed Rights, Including Due process which includes a right to be heard, a right to present evidence, and a right to witness testimony, a right to sufficiency of process, and for (5) Use of Threat of Force, Oppression Under Color of Law to Deprive Plaintiffs Rights and Privileges Secured by Constitution of the United States, and (6) Violation of Judicial Canons.

Specifically, Ms. Ueber's motion to recuse alleged that the trial court: (1) failed to report attorney misconduct; (2) violated her due process rights by seizing her property and denying her a trial by jury; (3) violated judicial canons by making statements that were intimidating and condescending; (4) made specific findings that Ms. Ueber was not credible, which she argued "amounts to unauthorized practice of law and . . . practicing law from the bench . . . evidencing bias and loss of impartiality."

On October 31, 2018, the trial court entered its order denying Ms. Ueber's motion for recusal. The trial court's order states in relevant part:

> The [trial court] concludes that Wife is dissatisfied with a number of rulings

---

[1] Ms. Ueber has appealed the trial court's rulings under Rule 3 of Tennessee Rules of Appellate Procedure, and these appeals are still pending in this Court. The subject of the instant appeal, which Ms. Ueber brings involves only the trial court's denial of her motion for recusal, and our holding herein does not bear on the Rule 3 appeals.

the [trial court] made in the course of her recently concluded divorce trial, and in the course of the hearing on her former trial counsels' claim for a judgment to liquidate their statutory attorney fees lien. Wife contends the [trial court] is unfairly biased against her and relies on the rulings made by the [trial court] during the course of those proceedings as evidence of that bias. Wife offers no proof whatsoever of any event or action taken by the [trial court] other than on the record during those proceedings. She merely points out rulings made by the [trial court] she contends are legally erroneous and argues the inference that bias against her personally is the wellspring of this legal error.

Ms. Ueber appeals.

After reviewing the filings and supporting documents, we have determined that oral argument is unnecessary in this matter. Accordingly, we will act summarily on the appeal in accordance with sections 2.05 and 2.06 of the Tennessee Supreme Court Rule 10B and will consider the case on the submissions of the parties and the attachments thereto.

## II. Issues

Although Appellant presents four issues for review, the only order this Court may review on an appeal pursuant to Tennessee Supreme Court Rule 10B is the trial court's order denying a motion to recuse. ***Duke v. Duke***, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012) ("Pursuant to [Tennessee Supreme Court Rule 10B], we may not review the correctness or merits of the trial court's other rulings[.]"). Accordingly, the sole issue is whether the trial court erred in denying the Appellant's motion for recusal. ***Garner v. Garner***, No. W2016-01213-COA-T10B-CV, 2016 WL 4249479, at *2 (Tenn. Ct. App. Aug. 10, 2016).

## III. Standard of Review

At the outset, we note that Appellant is proceeding *pro se* in this appeal.[2] It is well settled that *pro se* litigants must comply with the same standards to which lawyers must adhere. "Pro se litigants who invoke the complex and technical procedures of the courts assume a very heavy burden." ***Irvin v. City of Clarksville***, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1989). As previously explained by this Court:

Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many *pro se* litigants have no legal training and little familiarity with the judicial

---

[2] Ms. Ueber also acted *pro se* during the attorneys' fee portions of the trial proceeding.

- 3 -

system. However, the courts must also be mindful of the boundary between fairness to a *pro se* litigant and unfairness to the *pro se* litigant's adversary. Thus, the courts must not excuse *pro se* litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Jackson v. Lanphere,* No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at \*3 (Tenn. Ct. App. Aug.12, 2011) (quoting *Hessmer v. Hessmer,* 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)).

Tennessee Supreme Court Rule 10B requires appellate courts to review a trial court's ruling on a motion for recusal *de novo* with no presumption of correctness. Tenn. Sup. Ct. R. 10B, § 2.01. The party seeking recusal bears the burden of proof, and "any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case." *Williams by & through Rezba v. HealthSouth Rehab. Hosp. N.*, No. W2015-00639-COA-T10B-CV, 2015 WL 2258172, at \*5 (Tenn. Ct. App. May 8, 2015) (citing *McKenzie v. McKenzie,* No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at \*3 (Tenn. Ct. App. Feb. 11, 2014)).

## IV. Analysis

Before we undertake our analysis of whether the trial court erred by denying Ms. Ueber's motion for recusal, we must first address some procedural issues raised by Appellees. Messrs. Jackson and Heldman argue that Ms. Ueber's motion for recusal was not timely filed and therefore, her motion should be denied. Tennessee law requires recusal motions to be filed "promptly after the facts forming the basis for the motion become known." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). This requirement prevents a party from preserving an allegedly prejudicial event as an "ace-in-the-hole" to be used when the result of the trial is unfavorable. S*ee Bracey v. Bracey*, No. M2014-01865-COA-R3-CV, 2016 WL 2585771, at \*5 (Tenn. Ct. App. Apr. 26, 2016) (*no perm. app. filed* ). Here, Appellant waited seven months after the entry of the divorce decree and over two months after the judgment on attorneys' fees to file her motion for recusal. While Appellant's motion is arguably somewhat untimely, Tennessee law concerning appeals filed under Rule 10B gives this Court some discretion to waive certain procedural deficiencies in order to reach the merits of a motion filed under Rule 10B. *See Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009), (considering the substantive merit of recusal issue despite a "considerable passage of time between the assignment of the case to [the trial court] and the formal filing of the motion for recusal"); *Boren v. Hill Boren, PC*, 557 S.W.3d 542, 548 (Tenn. Ct. App. 2017), (considering the substantive merit of a recusal issue in Rule 10B appeal despite "Petitioner's failure to seek recusal in a timely manner"). Therefore, we will proceed to address this appeal on the merits of the case despite the allegation of untimeliness.

In addition to the issue of timeliness, Mr. Ueber argues that procedurally Appellant's motion for recusal is defective on its face. Tennessee Supreme Court Rule 10B, § 1.01 states that any motion seeking the recusal of a judge "shall be supported by an affidavit under oath or a declaration under penalty of perjury *on personal knowledge* and by other appropriate materials" (emphasis added). In support of her motion for recusal, Ms. Ueber filed her own affidavit attesting to the contents of her motion, and she also filed the affidavit of John Anthony Gentry, who was in the courtroom during the hearing on attorneys' fees. Both affidavits are sworn and state that they are made "pursuant to the penalties of perjury" and "are true and correct . . . to the best of my knowledge information and belief." Because these affidavits do not contain the specific words "on personal knowledge," Mr. Ueber argues that the affidavits are of no effect to satisfy the requirement that recusal motions be accompanied by an affidavit.

In ***Beaman v. Beaman***, No. M2018-01651-COA-T10B-CV, 2018 WL 5099778, at *13 (Tenn. Ct. App. Oct. 19, 2018), this Court rejected the argument that an affidavit or declaration must contain the specific words "on personal knowledge" in order for this Court to conclude that its contents are so based. The ***Beaman*** court determined that "such 'magic words' were not necessary" if a "fair interpretation" of the affidavit demonstrated substantial compliance with the requirements of the rule. ***Beaman***, 2018 WL 5099778, at *13. In relevant part, the ***Beaman*** court concluded:

> A fair interpretation of Wife's counsel's declaration in this case demonstrates that it was based on personal knowledge even though it did not expressly state that it was based "on personal knowledge." Unlike the affidavit at issue in ***Berg***, the declaration in this case did not include qualifying language necessarily negating the conclusion that it was based on personal knowledge. *Cf.* ***Berg***, 2018 WL 3612845, at *3 (holding that an affidavit that included an oath attesting that the statements contained therein were "true to the best of [the affiant's] knowledge, information and belief" was insufficient to signify that it was based on personal knowledge and therefore insufficient to support a Rule 10B motion for recusal).

*Id.* *See* ***In re Samuel P.***, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016) (concluding that the sworn statement in Father's affidavit satisfied the requirement under Rule 10B when it stated that the "foregoing is true to the best of my knowledge, information and belief.") Here, the affirmation language in the affidavits is the same as the language discussed in the case of ***Berg v. Berg***, No. M2018-01163-COA-T10B-CV, 2018 WL 3612845, *4 (Tenn. Ct. App. July 27, 2018) and cited by the ***Beaman*** court. However, as in ***Beaman***, it is apparent from the substance of the disputed affidavits here that they are based on the personal knowledge of the affiants. Mr. Gentry's affidavit chronicles the events he personally witnessed in court on August 30, 2018. For example, Mr. Gentry's affidavit states the following:

- 5 -

After recess/lunch break from approximately 12:00PM to 2:30PM, I re-entered Judge Woodruff's courtroom and seated myself in the front row of the courtroom gallery where I had been previously seated. Upon entry into the courtroom, Attorney Russ Heldman proceeded directly to where I was seated, extended his hand for a handshake and introduced himself to me. I shook Mr. Heldman's hand and told him my name[.]

Likewise, Ms. Ueber's affidavit, affirming the contents of her recusal motion, is replete with events she witnessed in court, both in her divorce trial and the hearing on attorneys' fees. Her recusal motion contains statements that could only be made on her personal knowledge. For example, Ms. Ueber's motion includes the following exchange:

THE COURT:     All right, then they will be Exhibits 11 through 15 for identification and let's go through them and I will see if Mr. Heldman and Mr. Jackson have any objection to the Court receiving those exhibits.

MS. UEBER:     Two things going on. The first question for you, the actual response to motion itself just to clarify, Your Honor, do you have a copy of most recent - . . .

THE COURT:     If you filed it, it will be in the file.

MS. UEBER:     Okay, I was just concerned because at the beginning of today it sounded like there might have been some confusion about the - - . . .

THE COURT:     Let's get to it, Exhibit No. 11 for identification.

Because it is apparent from the content of these affidavits that they were made on personal knowledge, the affidavits comport with the rule, and Ms. Ueber's motion is not procedurally deficient on its face.

Turning to the question of recusal, the legal principles applicable to this case were set forth in *In Re: Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016) (*no perm. app. filed*):

The party seeking recusal bears the burden of proof. *Williams*, 2015 WL 2258172, at *5; *Cotham v. Cotham*, No. W2015-00521-COA-T10B-CV, 2015 WL 1517785, at *2 (Tenn. Ct. App. Mar. 30, 2015) (*no perm. app. filed*). "[A] party challenging the impartiality of a judge 'must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be

questioned.'" ***Duke***, 398 S.W.3d at 671 (quoting ***Eldridge v. Eldridge***, 137 S.W.3d 1, 7-8 (Tenn. Ct. App. 2002)). When reviewing requests for recusal alleging bias, "it is important to keep in mind the fundamental protections that the rules of recusal are intended to provide." ***In re A.J.***, No. M2014-02287-COA-R3-JV, 2015 WL 6438671, at *6 (Tenn. Ct. App. Oct. 22, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016). "The law on judicial bias is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'" ***Id.*** (quoting ***Bean v. Bailey***, 280 S.W.3d 798, 803 (Tenn. 2009)).

The terms "bias" and "prejudice" usually refer to a state of mind or attitude that works to predispose a judge for or against a party, but not every bias, partiality, or prejudice merits recusal. ***Watson v. City of Jackson***, 448 S.W.3d 919, 929 (Tenn. Ct. App. 2014) (citing ***Alley v. State***, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994)). "'Even though the judge is expected to have no bias at the beginning of the trial, he must, perforce, develop a bias at some point in the trial; for the decision at the conclusion of the trial is based upon the impressions, favorable or unfavorable, developed during the trial.'" ***Id.*** at 933 (quoting ***Spain v. Connolly***, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980)). **To merit disqualification, the prejudice must be of a personal character, directed at the litigant, and stem from an extrajudicial source resulting in an opinion on the merits on some basis other than what the judge learned from participation in the case. *Id.* at 929. "A trial judge's opinions of the parties or witnesses that are based on what he or she has seen at trial are not improper and 'generally do[ ] not warrant recusal.'"** ***Id.*** at 933 (quoting ***Neuenschwander v. Neuenschwander***, No. E2001-00306-COA-R3-CV, 2001 WL 1613880, at *11 (Tenn. Ct. App. Dec. 18, 2001)). Consistent adverse rulings may lead a party to wish for another trial judge, but they do not provide a basis for requiring the trial judge's recusal from the case. ***Runyon v. Runyon***, No. W2013-02651-COA-T10B, 2014 WL 1285729, at *10 (Tenn. Ct. App. Mar. 31, 2014). Adverse rulings usually are not sufficient to establish bias. ***Duke***, 398 S.W.3d at 671 (citing ***State v. Cannon***, 254 S.W.3d 287, 308 (Tenn. 2008)). "'Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification.'" ***Id.*** (citing ***Alley***, 882 S.W.2d at 821).

***In Re: Samuel P.***, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016) (*no perm. app. filed*) (emphasis added). From our review of Ms. Ueber's brief, her arguments that the trial judge was biased fall into two general categories: (1) the trial court's alleged failure to follow precedent and its purportedly

incorrect rulings; and (2) statements made by the court that Appellant characterizes as intimidating and condescending and further evidence of bias. We will address each argument in turn.

## A. Rulings by the Trial Court

Appellant has not alleged any extrajudicial source of bias. *In Re: Samuel P.*, 2016 WL 4547543, at *2. Instead, her allegations of bias stem entirely from rulings made during or as a result of various hearings. Consequently, her request for recusal is subject to a higher burden than if it arose from extrajudicial sources. *Runyon v. Runyon*, No. W2013-02651-COA-T10B-CV, 2014 WL 1285729, at *6 (Tenn. Ct. App. Mar. 31, 2014). The alleged bias must be so pervasive that it denies a litigant a fair trial. *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *3 (Tenn. Ct. App. Feb. 11, 2014). Here, Appellant presents no evidence that the trial court was actually prejudiced or unfairly biased. Additionally, Appellant presents no evidence that the trial court reached a prejudged conclusion because of its alleged bias, partiality, or prejudice. Moreover, Appellant presents no evidence that the trial court entered any ruling to the detriment of Appellant due to its alleged bias. Instead, Ms. Ueber simply alludes to the trial court's adverse decisions after they have been rendered and claims bias. As previously stated, a trial judge's adverse rulings are not sufficient to establish bias. *State v. Cannon,* 254 S.W.3d 287, 308 (Tenn. 2008). The Tennessee Supreme Court has explained:

> [T]he mere fact that a judge has ruled adversely to a party or witness . . . is not grounds for recusal. . . . If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon.

*Davis v. Liberty Mut. Ins. Co.,* 38 S.W.3d 560, 565 (Tenn. 2001).

In her motion, Ms. Ueber alleges that the trial court is "guilty of gender bias." As support for her claim of gender bias, Ms. Ueber contends that the trial court ignored proof of Husband's abusive conduct; however, she does not specify in what way the trial court ignored Husband's conduct to her detriment. Additionally, Ms. Ueber cites a pre-trial decision by the trial court to grant Mr. Ueber $400,000 to purchase a house, and the trial court's refusal to grant her $50,000 to pay off credit cards and maintain her new business as proof of its gender bias.[3] While the division of marital assets is an appropriate issue for Ms. Ueber's Rule 3 appeal, it is not germane under Rule 10B. Furthermore, in her

---

[3] In the Final Decree of Divorce, it appears that the trial court included the $400,000 pre-trial distribution to Husband in the final allocation of assets.

motion to recuse submitted to the trial court, we note that Ms. Ueber does not allege gender bias.

Concerning the trial court's ruling on attorneys' fees, Ms. Ueber contends that the trial court violated her due process rights by failing to grant her a trial by jury on the issue of attorneys' fees, thereby "seizing her property." The right to a jury trial guaranteed by Tenn. Const. art. I, § 6 is one of the most valuable personal rights protected by the Constitution of Tennessee. *Harbison v. Briggs Bros. Paint Mfg. Co.*, 209 Tenn. 534, 540, 354 S.W.2d 464, 467 (1962). Tennessee Rule of Civil Procedure 38.02 provides that:

> Any party may demand a trial by jury of any issue triable of right by jury by demanding the same in any pleading specified in Rule 7.01 or by endorsing the demand upon such pleading when it is filed, or by written demand filed with the clerk, with notice to all parties, within fifteen (15) days after the service of the last pleading raising an issue of fact.

In civil cases, however, the right is not self-enforcing. *Nagarajan v. Terry*, 151 S.W.3d 166, 174 (Tenn. Ct. App. 2003). A party who desires a jury trial must file and serve a timely demand for a jury in accordance with Tennessee Rule of Civil Procedure 38.02. Parties who fail to comply with Rule 38 will be deemed to have waived their right to a jury trial. Tenn. R. Civ. P. 38.05; *Nagarajan,* 151 S.W. 3d at 175*; Gribble v. Buckner,* 730 S.W.2d 630, 633 (Tenn. Ct. App. 1986). In her supplemental response to the motion for attorneys' fees, Ms. Ueber argues that "disputed legal fees are clearly a separate civil cause of action and [she] cannot be deprived of her property without trial by jury." However, at no point in her response or any pleading in the record does she specifically request a trial by jury.

Ms. Ueber also contends that the trial court violated her right to due process by preventing her from fully presenting her case. At the end of the hearing on attorneys' fees, in which she represented herself, the trial court offered Ms. Ueber five minutes to summarize her argument. She responded that five minutes was not enough time, at which point, the trial court instructed her to sit down, without granting her the aforementioned five minutes. Ms. Ueber avers that this is a violation of her due process rights. The law gives trial courts inherent, common-law authority to control their dockets and the proceedings in their courts. *Hodges v. Attorney Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). "[T]he trial judge ... is ultimately responsible for every aspect of the orchestration of a trial." *State v. Milam*, No. M2008-00695-CCA-R3-CD, 2010 WL 744398, at *18 (Tenn. Crim. App. Mar. 3, 2010) (quoting *State v. McCray,* 614 S.W.2d 90, 93 (Tenn. Crim. App. 1981). In this case, the record simply does not support Ms. Ueber's contention that the trial court behaved in a manner that was biased or intended to violate her due process rights. Furthermore, there is no allegation in Appellant's recusal motion that the other side was given more than five minutes to summarize their position.

During both the divorce proceedings and the hearing on attorneys' fees, the trial court found Ms. Ueber to be "not credible." Ms. Ueber argues that making these credibility findings "amounts to unauthorized practice of law and . . . practicing law from the bench . . . evidencing bias and loss of impartiality." The trial court found that these arguments had "no substantive merit." In ***Wells v. Tennessee Board of Regents***, 9 S.W.3d 779 (Tenn. 1999), the Tennessee Supreme Court explained that

> trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See **State v. Pruett***, 788 S.W.2d 559, 561 (Tenn. 1990); ***Bowman v. Bowman***, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See **Tenn-Tex Properties v. Brownell-Electro, Inc.***, 778 S.W.2d 423, 425-26 (Tenn. 1989); ***Mitchell v. Archibald***, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998).

***Wells***, 9 S.W.3d at 783. Generally, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *See **Humphrey v. David Witherspoon, Inc.***, 734 S.W.2d 315, 315-16 (Tenn. 1987); ***Bingham v. Dyersburg Fabrics Co., Inc.***, 567 S.W.2d 169, 170 (Tenn. 1978). Again, Ms. Ueber did not allege that the credibility determinations were made based on anything other than the evidence presented in court and the trial court's observation of Ms. Ueber during court proceedings. Without more, this claim lacks merit to support a motion for disqualification or recusal.

As evidence of the trial court's bias and the denial of her due process rights, Ms. Ueber cites Messrs. Heldman and Jackson's purported warnings that "she would not get a fair ruling with the trial court." With regard to this claim, the trial court's order states in pertinent part:

> [Ms. Ueber] offers the uncorroborated assertion that her former trial counsel "repeatedly informed" her that the [trial court] "disliked her" and was biased and prejudiced against her during the course of the divorce trial. Wife claims her lawyer advised her that certain litigation tactics could turn out to be "very risky." From this warning [Ms. Ueber] concludes her lawyers were warning her the [trial court] was biased against her, when in fact, the proof offered at the hearing was that her lawyers had obtained what they believed was a favorable settlement offer from [Mr. Ueber], they advised her to accept it, and they cautioned her that she risked a less than favorable outcome if she rejected the offer and took her case to trial.

This assertion by Ms. Ueber that her that her former trial attorneys warned her that she would not get a fair trial with the judge is not supported by other appropriate material as

- 10 -

required by Tennessee Supreme Court Rule 10B, section 1.01. As such, Ms. Ueber's bare assertion without any type of corroboration is legally insufficient to provide a basis for the judge's recusal as to this claim.

Finally, Ms. Ueber cites the trial court's refusal to report attorney misconduct as proof of the trial court's failure to follow established precedent. Specifically, she alleges that Mr. Ueber's attorney issued illegal subpoenas, and the trial court failed to report this to the Board of Professional Responsibility. However, there are no subpoenas in the record for our review, and Ms. Ueber fails to provide any information on why the subpoenas were illegal. In addition, the record does not contain a transcript or a recitation of the trial court's ruling on the purportedly illegal subpoenas. In short, there is no basis for our review of this issue.

## B. Statements Made by the Trial Court

Tennessee Supreme Court Rule 10, Canon 2, Rule 2.8 (B) states:

> A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, court staff, court officials, and others subject to the judge's direction and control.

Tenn. Sup. Ct. R. 10, Canon 2, Rule 2.8. Ms. Ueber argues that the trial court violated this rule and cites to three statements made by the trial court during the hearing on attorneys' fees.

Ms. Ueber prepared a spreadsheet of assets and liabilities and attempted to enter it into evidence as Exhibit 11 during the hearing on attorneys' fees. While the parties were pre-marking exhibits to enter into evidence, Appellant alleges that the trial court repeatedly interrupted her and did not allow her to explain the significance of Exhibit 11. The trial court asked Ms. Ueber whether Exhibit 11 might be classified as a Rule 1006 summary, but Ms. Ueber did not understand the question. When Ms. Ueber explained that she was not familiar with that particular rule of evidence, the trial court stated, "**Then maybe you should have hired a lawyer to represent you.**" Ms. Ueber took great offense to this statement, arguing that it demonstrates a "profound lack of patience" and an "extreme bias" toward her in violation of "due process clauses." The trial court determined that it would postpone ruling on Exhibit 11 until opposing counsel had an opportunity to review it. However, Ms. Ueber refused to follow the trial court's instructions to proceed to her next exhibit. Instead, Ms. Ueber continued to argue the relevance of Exhibit 11. After repeatedly asking her to proceed to the next exhibit, the trial court warned, "**If you say another word about Exhibit [11], I'm going to have a deputy escort you to a holding cell.**" Ultimately Messrs. Jackson and Heldman

- 11 -

indicated that they had no opposition to the exhibit, and the trial court admitted Exhibit 11 into evidence; thus, no harm or prejudice to Ms. Ueber.

Lastly, as evidence of bias, Ms. Ueber alleges that during the hearing on attorneys' fees, the trial court stated, "**Didn't you read the motion? I assume you can read**." "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *4 (Tenn. Ct. App. Feb. 11, 2014) (quoting *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013)(internal citations omitted)); *Albuquerque Bernalillo Cnty. Water Utility Authority*, 229 P.3d 494, 511 (N.M 2010). As set out above, Tennessee Supreme Court Rule 10, Canon 2, Rule 2.8 requires a judge to be "courteous to litigants." Indeed, a judge should endeavor to diffuse a litigant's frustrations rather than exacerbate them. However, reviewing the trial court's statements during the hearing in context, as recited by Ms. Ueber, it is clear that the statements were made after several warnings that were continually ignored by Ms. Ueber. Even the most patient judge can become frustrated. A judge's irritation or exasperation does not establish the objective personal bias that would prevent a fair assessment of the merits of the case. *McKenzie*, 2014 WL 575908, at *5. As such, Ms. Ueber has failed to meet her burden to show "a reasonable basis for questioning the judge's impartiality." *State v. Hester*, 324 S.W.3d 1, 73 (Tenn. 2010); *In re Conservatorship of Tate*, No. M2012-01918-COA-10B-CV, 2012 WL 4086159, at *2-3 (Tenn. Ct. App. Sept. 17, 2012). Consequently, the record does not support the conclusion that the trial court erred in denying Ms. Ueber's motion for recusal.

## V.     Conclusion

For the foregoing reasons, we affirm the trial court's order denying the motion for recusal. Costs on the appeal are assessed against the Appellant, Ronna Lyn Ueber and her surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

- 12 -